1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   YAQUELIN SEVASTIANA                Case No.: 2:20-cv-02779-CBM-PJWx
     ORDONEZ,
12
            Plaintiff,                  **ORDER RE: MOTION TO**
13                                      **DISMISS CASE (DKT. NO. 11)**
     vs.
14
     WARREN A. STANLEY, ET AL.,
15
            Defendants.
16
17          The matter before the Court is Defendants' Motion to Dismiss Plaintiff's

18   Complaint (the "Motion").  (Dkt. No. 11.)  Also pending before the Court is

19   Defendants' Request for Judicial Notice ("RJN") (*see* Dkt. No. 12), and Plaintiff's

20   objections thereto (Dkt. No. 16-1).  The Motion and RJN are fully briefed.

21                              **I. BACKGROUND**

22          This is a civil rights case arising from the alleged seizure and impoundment

23   of Plaintiff Yaquelin Sevestiana Ordonez's ("Plaintiff") vehicle by members of the

24   California Highway Patrol ("CHP").

25   **A.     The CHP Impound Policy**

26          The Complaint alleges CHP maintains a policy by which a CHP officer

27   "may direct or cause a vehicle to be seized and impounded for 30 days without a

28   warrant" if the CHP officer concludes: (A) the driver of the vehicle has never been

                                        1

issued a driver's license; (B) the driver's license of the vehicle's driver is suspended or revoked; or (C) the driver of the vehicle may only drive a vehicle with a functioning, certified interlock device, and the vehicle lacks such a device.[1] (Dkt. No. 1 (Compl.) ¶ 10.)

When a vehicle is subject to the CHP Impound Policy, the vehicle is held at a tow yard designated by the CHP and the owner is barred from reclaiming possession of the vehicle even if the owner has or is accompanied by someone with a valid driver's license, is willing and able to reclaim possession, has automobile insurance, "is tending payment of accrued administrative fees and storage charges," and the vehicle is not posing a danger to public safety. (*Id*. at ¶ 11.) Vehicle storage charges accrue during this 30-day period, and those charges must be paid in full before the vehicle will be released. (*Id*. at ¶ 13.) If the charges go unpaid, the privately-owned storage yard sells the vehicle at a lien sale to satisfy unpaid storage charges and administrative fees. (*Id*.) If the sale of the vehicle does not fully satisfy those unpaid charges and fees, the former registered owner of the vehicle is liable to the tow-yard for the difference. (*Id*.) A 30-day impoundment of a vehicle subject to the CHP Impound Policy typically amounts to $2,000 or more in administrative fees and storage charges. (*Id*.)

Under the CHP Impound Policy, both the initial vehicle seizure and 30-day impoundment are made by the CHP without warrants or judicial review of any type. (*Id*. at ¶¶ 12, 15.) Notice to the owner is required under the CHP Impound Policy. (*Id*. at ¶ 16.) Furthermore, if the impoundment is made pursuant to Cal. Veh. Code § 14602.6 ("Section 14602.6"), the CHP Impound Policy mandates the CHP officers apply its provisions. (*Id*. at ¶ 17.) Amongst other things, Section 14602.6 provides that "[t]he registered owner of a vehicle that is removed and seized … or their agents shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to,

---

[1] Hereinafter referred to as the "CHP Impound Policy."

1   the storage, in accordance with Section 22852."  Cal. Veh. Code § 14602.6(b).

2   The Complaint alleges that the CHP Impound Policy only permits the owner of a

3   vehicle to argue at the storage hearing either that "mitigating circumstances" apply

4   or that the initial decision to have the vehicle removed from the street was invalid.

5   (*Id.* at ¶ 17.)

6        Plaintiff alleges Defendant Warrant A. Stanley ("Defendant Stanley"),

7   commissioner of the CHP, "personally approved" the CHP Impound Policy. (*Id.* at

8   ¶¶ 4, 10.)

9   **B.    The Seizure of Plaintiff's Car**

10       Plaintiff is the registered owner of a 2009 Toyota Matrix (the "car" or

11  "vehicle").  (*Id.* at ¶ 18.)  On October 24, 2019, defendant CHP Officer E. Bailey

12  ("Defendant Bailey") stopped the vehicle while it was being driven by Francisco

13  Gomez Lopez ("Mr. Lopez"), the spouse of Plaintiff.  (*Id.* at ¶ 19.)  During this

14  traffic stop, Defendant Bailey "seized and impounded" the car pursuant to Cal.

15  Veh. Code § 14602.6(a)(1), on the ground that Mr. Lopez had a suspended driver's

16  license.  (*Id.*)  Mr. Lopez informed Defendant Bailey that Plaintiff's sister, a

17  licensed driver, would arrive in minutes to legally take the car, but Defendant

18  Bailey nevertheless had the car towed away and imposed a 30-day impound of the

19  car.  (*Id.* at ¶ 20.)

20       The next day, October 25, 2019, Plaintiff, accompanied by an individual

21  with a California driver's license, requested that officials present at the CHP

22  Central Los Angeles office release her vehicle from impound.  (*Id.* at ¶ 21.)

23  Plaintiff spoke with Defendant CHP Sergeant S. Pool ("Defendant Pool"), who

24  refused to release the vehicle, even though Plaintiff informed him that she was

25  accompanied by a licensed driver and was willing to pay towing and storage fees,

26  the car was registered and insured, and there was "no safety or other community

27

28

1    caretaking justification" for refusing release of the vehicle.[2]  (Id.)  The same day,

2    Plaintiff, through her counsel, delivered to Defendant Stanley and Defendant CHP

3    Captain Charles Sampson ("Defendant Sampson") a letter requesting the release

4    of the car and stating refusal to release the car was in violation of *Brewster v.*

5    *Beck*, 859 F.3d 1194 (9th Cir. 2017) and *Sandoval v. County of Sonoma*, 912 F.3d

6    509 (9th Cir. 2018).  (*Id*. at ¶ 23; *see also* Compl. at Exh. A.)

7         On October 30, 2019, Plaintiff attended a storage hearing in which CHP

8    officials, including Defendant CHP Sergeant A. Braaksma ("Defendant

9    Braaksma"), refused to release her vehicle.  (*Id*. at ¶ 22.)

10        Plaintiff did not receive her vehicle until thirty days had passed and she

11   tendered payment of $2,350 to the storage yard.  (*Id*. at ¶ 26.)

12        Plaintiff filed the Complaint on March 25, 2020, asserting three causes of

13   action under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth

14   Amendments, and two causes of action under the laws of California.

15                              **II. JURISDICTION**

16        The Court has jurisdiction over this action under 42 U.S.C. § 1983.

17                             **III. LEGAL STANDARD**

18        Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a

19   claim upon which relief can be granted."  To survive a motion to dismiss, the

20   complaint "must contain sufficient factual matter, accepted as true, to 'state a

21   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663

22   (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  All

23   well-pleaded facts are taken as true, with all reasonable inferences in favor of the

24   plaintiff. *Twombly*, 550 U.S. at 570.  Labels, conclusions, or formulaic recitation

25   of the elements of a cause of action will not suffice.  *Twombly*, 550 U.S. at 555.  A

26

27   _____

28   [2] Plaintiff also alleges Defendant Pool refused to allow her to record the conversation, which
     Plaintiff identifies as "a violation of Plaintiff's First and Fourteenth Amendment rights," but is
     not alleged as a cause of action in the Complaint.

1   complaint must state "evidentiary facts which, if true, will prove [the claim]."

2   *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  If a complaint

3   cannot be cured by additional factual allegations, dismissal without leave to

4   amend is proper.  *Twombly,* 550 U.S. at 555.  In considering a motion to dismiss for

5   failure to state a claim, a court may only consider the allegations contained in the

6   pleadings, exhibits attached to or referenced in the complaint, and matters

7   properly subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*

8   551 U.S. 308, 322 (2007).

9                             **IV. DISCUSSION**

10  **A.      Request for Judicial Notice**

11          Courts may judicially notice a fact that is not subject to reasonable dispute

12  because it can be "accurately and readily determined from sources whose accuracy

13  cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Courts may take

14  judicial notice of matters in the public record, but not those which may be subject

15  to reasonable dispute.  *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2011).

16          Defendants request the Court to judicially notice: (1) HPM 81.2, Ch. 2 –

17  Storage Impound and Release Procedures and Ch. 4 – Post Storage Hearings,

18  marked as "Exhibit 1;" (2) a CHP 180 form entitled "Vehicle Report" allegedly

19  issued to Plaintiff by CHP on October 24, 2019, marked as "Exhibit 2;" and (3) a

20  Post Storage Hearing Report (CHP 422B form) dated October 30, 2019, marked as

21  "Exhibit 3" (collectively, the "Exhibits").  (*See* Dkt. No. 12, Ex. 1-3.)  Plaintiff

22  objects to the request for judicial notice.

23          The Court sustains Plaintiff's objections and **<u>DENIES</u>** Defendants' request

24  for judicial notice.  Because Defendants do not disclose the source of the Exhibits,

25  the Court cannot determine whether they were obtained "from sources whose

26  accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Moreover,

27  the facts allegedly contained in Exhibit 2 and Exhibit 3 are subject to reasonable

28

1    dispute.  (*See* Dkt. No. 16-1 (Objections to Defendants' Request for Judicial

2    Notice).)

3         Defendants object to the declaration of Donald W. Cook, filed by Plaintiff in

4    support of her opposition to the Motion.  (*See* Dkt. No. 17 (Objections to

5    Plaintiff's Evidence in Opp. to Mot.); Dkt. No. Dkt No. 16-2 (Cook Decl.).)  The

6    Cook Declaration is offered "to refute or correct factual claims defendants assert

7    … in the event that the Court … believes it can judicially notice the purported

8    facts defendants offer[.]"

9         The Court, having denied Defendants' request for judicial notice, finds that

10   the Cook Declaration is unnecessary to resolve this motion to dismiss.  Therefore,

11   the Court **SUSTAINS** the objections and does not consider the Cook Declaration.

12   **B.**    **Fourth Amendment – 30-Day Impoundment**

13       **1.**    **The First Cause of Action Sufficiently Alleges a Violation of the**

14               **Fourth Amendment**

15        The First Cause of Action (against all Defendants) alleges the seizure and

16   30-day impound of the vehicle violated the Fourth Amendment because it

17   was made without a warrant and did not fall within an exception to the warrant

18   requirement.  (Compl. at ¶ 28.)

19        Here, the Court finds the Complaint sufficiently alleges a claim for violation

20   of the Fourth Amendment arising from the continued impoundment of Plaintiff's

21   vehicle.  *See Brewster v. Beck*, 859 F.3d 1194, 1195-1196 (9th Cir. 2017).  The

22   Ninth Circuit held in *Brewster* that a 30-day impoundment implicated the Fourth

23   Amendment because "[t]he Fourth Amendment doesn't become irrelevant once

24   the initial seizure has run its course."  *Brewster*, 859 F.3d at 1197.  When Brewster

25   arrived at the impound facility with proof of ownership and a valid driver's

26   license, "[t]he exigency that justified the seizure vanished" and the continued

27   impoundment of the vehicle "constituted a seizure that required compliance with

28   the Fourth Amendment."  *Id.* at 1196-1197.

1    Defendants argue the Fourth Amendment violation asserted by Plaintiff
2    applies only to Defendant Bailey, the officer who initially seized and impounded
3    the vehicle.  Plaintiff alleges, however, Defendants Pool and Braaksma refused to
4    release the car to Plaintiff despite proof the exigency was extinguished (*see id.* ¶¶
5    21-22), Defendants Stanley and Sampson refused to release the car to Plaintiff
6    after receiving a written request to do so (*see id.* ¶ 23), and Defendant Stanley
7    personally approved the CHP Impound Policy (*see id.* ¶ 10).  Moreover, the
8    Complaint alleges Defendant Sampson knew his subordinates withheld the release
9    of Plaintiff's vehicle, and Defendant Sampson knowingly refused to terminate that
10   course of action.  (Compl. at ¶ 23; *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th
11   Cir. 2011) (holding a defendant may be liable under 42 U.S.C. § 1983 if there
12   exists "a sufficient causal connection between the supervisor's wrongful conduct
13   and the constitutional violation").)  Therefore, the Complaint alleges a Fourth
14   Amendment violation arising from the thirty-day impoundment against the
15   Defendants.

16        **2.    The law which applies to the Fourth Amendment violation in the**
17             **First Cause of Action was clearly established.**

18        Defendant argues the First Cause of Action should be dismissed under the
19   doctrine of qualified immunity because the law is not clearly established that a 30-
20   day impoundment of a vehicle violates the Fourth Amendment.  "Qualified
21   immunity shields federal and state officials from money damages unless a plaintiff
22   pleads facts showing (1) that the official violated a statutory or constitutional right,
23   and (2) that the right was 'clearly established' at the time of the challenged
24   conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
25   Courts may decide to address either prong of the analysis first, and a decision in
26   defendant's favor on either prong establishes qualified immunity. *See id.*
27        As discussed above, Plaintiff sufficiently alleges the violation of a
28   constitutional right based upon the 30-day impoundment of her vehicle.

Therefore, qualified immunity does not bar the Fourth Amendment claim if the law was clearly established that a warrantless impoundment of a vehicle violates the Fourth Amendment if the exigency justifying the seizure was extinguished.  The law is "clearly established" if there is controlling authority or a "robust consensus of cases of persuasive authority."  *al-Kidd*, 563 U.S. at 741-742.

Here, *Brewster*, 859 F.3d  at 1196-1197, and *Sandoval*, 912 F.3d at 520,  are controlling authority for the identical point of law at issue.  Defendants raise several arguments against concluding that *Brewster* and *Sandoval* clearly establish the law at issue.  *First*, Defendants argue the Supreme Court "recently emphasized that it is has never held that a single circuit court opinion … can clearly establish the law for purposes of qualified immunity," citing *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1777 (2015).  (Mot. at p. 9:18-25.)  This argument is unpersuasive because two circuit opinions – *Brewster* and *Sandoval* – hold that the Fourth Amendment is violated when a vehicle is impounded after the exigency justifying its seizure is extinguished.  Furthermore, although the Supreme Court in *Sheehan* and *Carroll v. Carman*, 574 U.S. 13, 17 (2014) left open whether a single circuit opinion may "clearly establish" the law for purposes of qualified immunity, the Ninth Circuit does not require a certain number of cases to defeat qualified immunity – rather, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (quotations marks and citation omitted).  The Court finds *Brewster* and *Sandoval* clearly establish that the continued impound of a vehicle despite proof that the exigency justifying the initial seizure has terminated violates the Fourth Amendment.

Therefore, the Court **<u>DENIES</u>** the motion to dismiss the First Cause of Action based on qualified immunity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.     Procedural Due Process**

The Second Cause of Action alleges violations of substantive and procedural due process under 42 U.S.C. § 1983 against Defendants Stanley, Sampson, Braaksma, and Pool.[3]  (Compl. ¶ 29-36.)  Plaintiff alleges the post-seizure hearing was defective because Plaintiff could not challenge the lawfulness of the 30-day impoundment, the hearing was not before a neutral, no judicial review of the seizure was provided, and no notice was provided stating Plaintiff could retrieve her car in less than thirty days pursuant to the Fourth Amendment. (Compl. at ¶ 35.)

Defendants argue qualified immunity applies because Plaintiff fails to allege the Defendants violated a statutory or constitutional right, and that the right was not clearly established at the time of the challenged conduct.

**1.     The Second Cause of Action alleges violations of the Due Process Clause**

The Due Process Clause of the Fourteenth Amendment states, in relevant part, that "[n]o state shall … deprive any person of … property, without due process of law."  U.S. Const. Amend. XIV.  "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (quotation marks omitted).  If the Court answers the first inquiry in the affirmative, the second inquiry requires a court to "examine[] whether the procedures attended upon that deprivation were constitutionally sufficient." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013).  To determine whether the procedures satisfy due process, the Court applies the test from *Mathews v. Eldridge*, 424 U.S. 319

---

[3] The Complaint identifies the Second Cause of Action as raising both procedural and substantive due process, but Plaintiff only alleges a procedural due process claim.

1  (1976).[4]  *See, e.g., Nelson v. Colorado*, 137 S. Ct. 1249, 1252 (2017); *Orloff v.*
2  *Cleland*, 708 F.2d 372, 378-79 (9th Cir. 1983).

3       Plaintiff alleges the 30-day impoundment resulted in the loss of the use of
4  her vehicle.  (Compl. at ¶ 31.)  "Loss of the use and enjoyment of a car deprives
5  the owner of a property interest that may be taken from him only in accordance
6  with the Due Process Clause.  Due Process strictures must be met though the
7  deprivation be temporary."  *Stypmann v. City & Cty. of San Francisco*, 557 F.2d
8  1338, 1342 (9th Cir. 1977).  Therefore, Plaintiff was deprived of a protected
9  interest in the use of her property.

10      Thus, the Court must apply the *Mathews* balancing test to determine
11  whether the procedures afforded to Plaintiff satisfy due process.  The first *Mathews*
12  factor is the private interest affected.  The Complaint alleges that a vehicle
13  impounded pursuant to the CHP Impound Policy is unavailable for 30 days, and
14  during that time storage fees accrue.  (Compl. at ¶ 14.)  If the owner is unable to
15  pay those fees, then the vehicle may be sold to satisfy the fees owed by the vehicle
16  owner.  (*Id.*)  Accordingly, this factor weighs in favor of Plaintiff given the
17  potentially lengthy and expensive deprivation.

18      The second factor under *Mathews* is the risk of erroneous deprivation
19  through the procedures used, and the probable value of additional or substitute
20  procedural safeguards.  *Nelson*, 137 S.Ct. at 1255.  Section 22852 provides the
21  procedure for a storage hearing following impoundment of a vehicle under Section
22  14602.  As Plaintiff argues, the procedures do not permit the impounding agency
23  to order release of the vehicle due to constitutional considerations, as the only
24  remedy offered by Section 22852 is to shift the costs of storage to the agency.
25  Moreover, Section 14602.6(d)(1) does not provide that a lack of constitutional

26

27  ―――――――――――――
   [4] The *Mathews* balancing test evaluates the adequacy of a hearing by considering (A) the private
28  interest affected; (B) the risk of erroneous deprivation of that interest through the procedures
   used; and (C) the governmental interest at stake.  *Nelson*, 137 S.Ct. at 1255.

1    authority for the continued impoundment of the vehicle is grounds for immediate

2    release.  Cal. Veh. Code §§ 14602(d)(1)(A)-(E).  Additionally, the lack of an

3    impartial decisionmaker at the storage hearing heightens the risk of erroneous

4    deprivation.  *Sandoval*, 912 F.3d at 522.  Defendants neither identify a

5    governmental interest at stake, nor explain how that interest would be

6    detrimentally affected if greater procedural safeguards were required.

7         Regarding notice, the Ninth Circuit held in *Gete v. INS*, 121 F.3d 1285,

8    1287-91, 1297 (9th Cir. 1997) that the owners of vehicles seized by the INS were

9    entitled to "sufficient notice concerning the factual and legal bases for [the]

10   seizures."  Here, Plaintiff alleges "[t]he notices sent pursuant to the [CHP]

11   Impound Policy … communicate … that the vehicle will be kept for a minimum

12   of 30 days, and misleads the owner to believe that any attempt to seek the return

13   of the vehicle in less than 30 days is effectively meaningless."  (Compl. at ¶ 16.)

14   Nor do the notices "inform someone of their right to claim the vehicle with their

15   own license or a licensed driver at a time they could afford to pay the [one-day]

16   initial impound fee or a few days of storage fees."  (*Id.*)

17        Therefore, the Court finds the allegations are sufficient to support a claim for

18   violation of the Due Process Clause.

19   **2.      The rights to an adequate post-seizure hearing, notice, and an**

20   **         impartial neutral are "clearly established" under the Due Process**

21   **         Clause**

22        Because Plaintiff alleges a violation of procedural due process, the Court

23   must consider whether the law was "clearly established" that the procedural

24   protections afforded to Plaintiff during the storage hearing were deficient.  *See al-*

25   *Kidd*, 563 U.S. at 735.  In *Stypmann*, 557 F.2d at 1344, the Ninth Circuit held the

26   Due Process Clause was violated where the owner of a seized vehicle was not

27   "afforded [a] prompt post-seizure hearing at which the person seizing the property

28   must at least make a showing of probable cause."  Moreover, due process

11

generally requires a hearing before an impartial decisionmaker and notice sufficient to apprise vehicle owners of the legal basis for the seizure of the property. *See Goldberg v. Kelly*, 397 U.S. 254, 271 (1970); *Gete*, 121 F.3d at 1297.

Accordingly, the law is clearly established that due process entitles owners of seized vehicles to a post-hearing seizure in which the seizing official bears the burden of demonstrating probable cause before a neutral decisionmaker. The Complaint alleges Plaintiff was not afforded a hearing before a neutral and the procedures afforded to Plaintiff at the hearing shifted the burden on her to justify early release of the vehicle. (Compl. at ¶ 17.)

Therefore, the Court **DENIES** the motion to dismiss the Second Cause of Action on the basis of qualified immunity.

**D.  Fifth Amendment Takings**

The Complaint alleges Defendants violated the Takings Clause of the Fifth Amendment by impounding Plaintiff's vehicle for 30 days, "ostensibly for the public purpose of deterring future unlawful driving," without just compensation. (Compl. at ¶ 38.) Defendants argue the Fifth Amendment claim fails because a constitutional taking may not be affected by an individual.

Although the Ninth Circuit has not addressed whether government employees sued in their individual capacity may be liable under the Takings Clause, the Sixth Circuit has concluded individual government employees "neither have nor claim the eminent domain power, nor any power similar to it," unlike a government body. *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984). District courts in the Ninth Circuit have adopted this reasoning when dismissing Takings Clause claims against government employees. *See, e.g., Bridge Aina Le'a, LLC v. State of Hawaii Land Use Commission*, 125 F. Supp. 3d 1051, 1079 (D. Haw. 2015) (holding individual government employees cannot affect a taking); *Marina Point Dev. Ass'n v. Cty. of San* Bernardino, No. 19-cv-00964, 2020 WL 2375221,

at *3 (C.D. Cal. 2020) (same); *Fishback v. Edmiston*, No. 18-cv-6946, 2019 WL 7865181, at *5 (C.D. Cal. 2019) (same).

As the district court explained in *Bridge Aina Le'a*, 125 F. Supp. 3d at 1078, the "nature of a taking is that a public entity is taking private property for a public purpose, and must provide just compensation in return.  This concept is inconsistent with the notion that someone acting in an individual capacity has taken property or could be personally liable for a taking."  Because Plaintiff sues Defendants in their individual capacities, the Court **GRANTS** the motion to dismiss the Third Cause of Action.  Plaintiff argues she "can amend her allegations to include" that "defendants named herein have acted jointly with the entity – the CHP – in a conspiracy to violate the Fifth Amendment[.]"  (Opp. at p. 27:7-15.)  The Court **GRANTS** Plaintiff leave to amend her Fifth Amendment claim consistent with Fed. R. Civ. P. 11.  *See also Bennis v. Michigan*, 516 U.S. 442, 452-53 ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.");  *U.S. v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 949-50 (9th Cir. 2008) (addressing whether an agency was authorized to exercise the power of eminent domain).

**E.    The Bane Act**

The Fourth Cause of Action alleges a violation of Cal. Civ. Code § 52.1 (the "Bane Act").  The elements of a cause of action under the Bane Act are: (1) defendants interfered by threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion; (2) with the exercise or enjoyment by any individual of rights secured by federal or state law.  *See King v. State of Cal.*, 242 Cal. App. 4th 265, 294 (2015); *see also Bane Act-Essential Factual Elements*, CACI (2020).  Plaintiff must allege defendants had a specific intent to violate the

1    rights of plaintiff. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir.

2    2018) (citing *Cornell v. City. of San Francisco*, 17 Cal. App. 5th 766, 802 (2017)).

3         Defendant argues the Bane Act claim must be dismissed because "Plaintiff

4    fails to allege any specific intent by any of the defendants to violate [P]laintiff's

5    constitutional rights." (Opp. at p. 22:1-3.) The Complaint alleges Defendant

6    Stanley "personally approved the [CHP] Impound Policy and its application to the

7    seizure of Plaintiff's vehicle" despite his awareness that the policy "was contrary

8    to controlling Ninth Circuit law." (Comp. at ¶ 25.) Therefore, Plaintiff alleges the

9    CHP Impound Policy was applied despite awareness that its provisions were

10   unconstitutional. Accordingly, Plaintiff has pled a violation of the Bane Act.

11   **F.     California Constitution**

12        The Fifth Cause of Action alleges a violation of Cal. Const., Art. I, § 13

13   ("Section 13"), which provides: "The right of the people to be secure in their

14   persons, houses papers, and effects against unreasonable seizures and searches

15   may not be violated; and a warrant may not issue except on probable cause,

16   supported by other or affirmation, particularly describing the place to be searched

17   and things to be seized." Plaintiff alleges the impoundment of the vehicle was

18   without a warrant and not justified by a warrant exception during the thirty days of

19   impound. (Compl. at ¶ 46.) Defendants argue Section 13 does not provide a

20   private right of actions for monetary damages under the framework enunciated by

21   the California Supreme Court in *Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th

22   300, 329 (2002).

23        In *Katzberg*, the California Supreme Court considered whether an

24   individual may bring an action for damages under article I, section 7 of the

25   California Constitution. *Id.* at 303. The California Supreme Court held the

26   appropriate framework for determining the existence of a damages action to

27   remedy an asserted constitutional injury requires a two-step process. *Id.* at 317.

28   First, the court asks "whether there is evidence from which we may find or infer,

1    within the constitutional provision at issue, an affirmative intent either to authorize

2    or to withhold a damages action to remedy a violation." *Id.*  This requires

3    consideration of "the language and history of the constitutional provision at issue,

4    including whether it contains guidelines, mechanisms, or procedures implying a

5    monetary remedy[.]" *Id.*  Second, if no affirmative intent to authorize or withhold

6    a damages remedy is found, the court "undertakes the 'constitutional tort' analysis

7    adopted by *Bivens* and its progeny." *Id.*  Factors to be considered in the

8    constitutional tort analysis are "whether an adequate remedy exists, the extent to

9    which a constitutional tort action would change established tort law, and the nature

10   and significance of the constitutional provision." *Id.*

11        The California Supreme Court has not held that Section 13 provides a

12   private right of action, and district courts are split whether Section 13 provides are

13   private right of action. *See Roy v. Cty. of L.A.*, 114 F. Supp. 3d 1030, 1042-43

14   (C.D. Cal. 2015) (collecting cases).  However, in *Katzberg*, the California

15   Supreme Court suggested there should be a damages remedy for violations of

16   Section 13 by contrasting the rights of a victim subject to a search and seizure in

17   violation of Section 13 with the rights of a victim of Cal. Const. Art. I, § 7(a),

18   which does not permit a damages remedy. *See Katzberg*, 29 Cal. 4th at 321-24;

19   *see also Smith v. County of Riverside*, No. 5-512-VAP, at *18-20 (C.D. Cal. 2006).

20   The California Supreme Court in *Katzberg* recognized the history of Section 13

21   supported a damages action, as the Magna Carta "provided a damage remedy for

22   the victims of unlawful searches at common law." *Katzberg*, 29 Cal. 4th at 323-

23   324 (citing *Brown v. State*, 89 N.Y.2d 172, 188 (N.Y. Ct. App. 1996)).  The

24   *Katzberg* Court concluded that Cal. Const. Art. I, § 7(a) did not support a damages

25   action because "[t]he parties have not cited … any similar history with respect to

26   the liberty interest set out in article I, section 7(a)[.]" *Id.* at 324.

27        "For questions of California law, [this Court] must apply the law as [it]

28   believe[s] the California Supreme Court would apply it." *Astaire v. Best Film &*

15

1   *Video Corp.*, 116 F.3d 1297, 1300 (9th Cir. 1997), *amended*, 136 F.3d 1208 (9th

2   Cir. 1998).  If the issue has not been decided by the California Supreme Court, this

3   Court "must predict how the California Supreme Court would decide the issue…"

4   *Id.*  Here, this Court finds the California Supreme Court would decide Section 13

5   supports a damages action based on the *Katzberg* opinion.

6   **G.    State Law Immunities**

7          Defendants argue the state law claims must be dismissed pursuant to the

8   immunities of Cal. Gov. Code §§ 820.6., 821.6, and 820.2.

9          **1.    Cal. Gov. Code § 820.6**

10         Section 820.6 provides immunity for employees who act in "good faith,

11  without malice, under the apparent authority of an enactment" that is later

12  declared unconstitutional.  *See* Cal. Gov. Code § 820.6.  The Government Code

13  defines an "enactment" as a "constitutional provision, statute, charter provision,

14  ordinance or regulation."  Cal. Gov. Code § 810.6.

15         Here, Section 820.6 immunity does not apply because the CHP Impound

16  Policy was not an "enactment," as defined by Cal. Gov. Code § 810.6.  Defendants

17  argue "the impound here was made pursuant to state law, i.e., Vehicle Code

18  section 14602.6," which is an enactment to which Section 820.6 immunity may

19  attached.  (Reply at p. 28:28-29:3 (citing Compl. at ¶¶ 17, 25).)  The Complaint

20  alleges the CHP Impound Policy requires CHP officers to continue impoundment

21  for thirty days even if the vehicle's owner is a validly licensed driver or has a

22  licensed driver available to drive the vehicle, is willing and able to reclaim

23  possession, has vehicle insurance, is willing and able to pay accrued fees and

24  charges, and the vehicle is not posing a danger to public safety.  (Compl. at ¶ 11.)

25  Those requirements of the CHP Impound Policy are not contained in Section

26  14602.6.  *See* Cal. Veh. Code § 14602.6.  Therefore, the CHP Impound Policy is

27  not identical to Section 14602.6, and the Court finds Defendants are not immune

28  pursuant to Section 820.6.

1

2. **Cal. Gov. Code § 821.6**

2

Section 821.6 provides "[a] public employee is not liable for injury caused

3

by his instituting or prosecuting any judicial or administrative proceedings within

4

the scope of his employment, even if he acts maliciously and without probable

5

cause."  Cal. Gov. Code § 821.6.

6

The Ninth Circuit has held that immunity under Section 821.6 is limited to

7

actions for malicious prosecution.  *Garmon v. County of Los Angeles*, 828 F.3d

8

837, 847 (9th Cir. 2016); *see also Asgari v. City of Los Angeles*, 15 Cal.4th 744,

9

752 (1997).[5]  Because Plaintiff's claims under state law are not for malicious

10

prosecution, Section 821.6 does not apply.

11

3. **Cal. Gov. Code § 820.2**

12

Section 820.2 provides that "[e]xcept as otherwise provided by statute, a

13

public employee is not liable for an injury resulting from his act or omission

14

where the act or omission was the result of the exercise of the discretion vested in

15

him, whether or not such discretion be abused."  Cal. Gov. Code § 820.2.

16
17
18
19
20
21
22
23
24

> A discretionary act requires a conscious balancing of risks
> and advantages when making basic policy decisions, *see
> Bell v. State of California*, 63 Cal.App.4th 919, 929, 74
> Cal.Rptr.2d 541 (1998); it does not protect operational or
> ministerial decisions that implement policies.  *Martinez v.
> City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998)
> (citing *Johnson v. State of California*, 69 Cal.2d 782, 793,
> 73 Cal.Rptr. 240, 447 P.2d 352 (1968)).  A ministerial act
> is an act pursuant to an order, or an act where a person had
> no choice.  *McCorkle v. City of Los Angeles*, 70 Cal.2d
> 252, 261, 74 Cal.Rptr. 389, 449 P.2d 453 (1969).  An
> operational act is one in which the person who made the
> decision, implemented the decision.  *See id.*

25

*Trujillo v. City of Ontario*, 428 F.Supp.2d 1094, 1123 (C.D. Cal. 2006), *aff'd sub*

26

*nom. Bernhard v. City of Ontario*, 270 Fed.Appx 518 (9th Cir. 2008).  Defendants

27

have the burden to demonstrate "that they are entitled to § 820.2 immunity for a

28

[5] Neither party cites *Garmon*, 828 F.3d at 847 in its briefs, but it is dispositive of this issue.

specific policy decision made by an employee who consciously balanced the decision's risks and benefits."  *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 640 (9th Cir. 2012).

Plaintiffs' state law claims for violation of the California Constitution and Bane Act are grounded in the 30-day impoundment of the vehicle pursuant to the CHP Impound Policy.  (FAC at ¶¶ 42, 46.)  Defendants argue Section 820.2 immunity applies because Section 14602.6 "confers discretionary authority on law enforcement officers to determine whether to impound a vehicle." (Mot. at p. 24:23-27 (citing *Highway Patrol v. Sup. Ct.*, 162 Cal.App.4th 1144, 1154 (2008) (holding Section 14602.6 "does not create a mandatory duty for a police officer to impound the vehicle of an individual arrested for driving with a suspended license.")).)  Moreover, Defendants argue Plaintiff admitted in her Opposition that the decision to impound a vehicle is discretionary.  (*See* Opp. at p. 15:18-21 ("[D]efendants made a *discretionary* decision to impound Ms. Ordonez's car for 30 days to *punish* her for allowing an unlicensed driver to drive it." (citing Compl. at ¶¶ 24, 33-34, 42) (italics in original)).)  Indeed, the FAC alleges "[t]he 30-day impoundment of Plaintiff's Toyota was done intentionally, *at defendants' discretion*."  (Compl. at ¶ 42.)  In her Opposition, Plaintiff does not explain why that allegation of the Complaint should not be construed as alleging the CHP Impound Policy confers discretion on Defendants' to continue the impoundment of the vehicle.

Here, Defendants have not met their burden to demonstrate Section 820.2 applies.  Although at least one California court has held Section 14602.6 does not create a mandatory duty, the Complaint alleges the CHP Impound Policy is not coterminous with Section 14602.6.  Rather, under the alleged CHP Impound Policy, Defendants were required to impound Plaintiff's vehicle for thirty days despite Plaintiff's proof that the exigency warranting the initial impound had ceased.  By refusing to release Plaintiff's vehicle, Defendants were implementing

1    a policy – acts that are unprotected by Section 820.2.  Moreover, Defendants sole

2    argument regarding application of Section 820.2 as to Defendant Stanley is that

3    "Stanley approved CHP's impound policy," and therefore made a discretionary

4    policy decision immunized by Section 820.2.  Defendants do not argue Defendant

5    Stanley "consciously balanced the decision's risks and benefits," *AE ex rel.*

6    *Hernandez*, 666 F.3d at 640, and therefore have not met their burden to

7    demonstrate Section 820.2 applies.

8        Therefore, the Court cannot conclude Section 820.2 applies based merely on

9    the pleadings before it, but that issue may be raised at a later stage of this

10   litigation.  *See United Motors Int'l, Inc. v. Hartwick*, No. CV 17-00243 BRO

11   (EX), 2017 WL 888304, at *9 (C.D. Cal. 2017) (holding "the Court cannot find,

12   based merely on the pleadings before it, the Government Defendants are

13   absolutely immune" under Section 820.2).  Therefore, the Court **DENIES** the

14   motion to dismiss the state law claims.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

19

# V. CONCLUSION

The Court **GRANTS-IN-PART** the motion to dismiss, as follows:

- The Court **DENIES** the motion to dismiss the First Cause of Action (Fourth Amendment);
- The Court **DENIES** the motion to dismiss the Second Cause of Action (Procedural Due Process);
- The Court **GRANTS** the motion to dismiss the Third Cause of Action (Takings Clause).  The Court **GRANTS** Plaintiff's request for leave to amend.  Plaintiff may file, on or before October 30, 2020, an amended complaint or a declaration stating Plaintiff's intent to proceed without amending the complaint at this time.
- The Court **DENIES** the motion to dismiss the Fourth Cause of Action (Bane Act) and Fifth Cause of Action (Section 13 of Cal. Const.).

**IT IS SO ORDERED.**

DATED: October 16, 2020

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE