**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: manncook@earthlink.net

Attorney for Plaintiff

**FILED**
CLERK, U.S. DISTRICT COURT

APRIL 20, 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____YS_____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAQUELIN SEVASTIANA ORDONEZ, an individual,<br><br>            Plaintiff,<br><br>vs.<br><br>WARREN A. STANLEY, CHARLES SAMPSON, SGT. A. BRAAKSMA (#16551), SGT. S. POOL (#14242), OFFICER E. BAILEY (#22360), and Does 1 through 10, all sued in their individual capacities<br><br>            Defendants. | Case No. 2:20-cv-2779 CBM (GJSx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**1.  Unlawful Vehicle Impound - 42 U.S.C. § 1983**<br><br>**2.  Substantive and Procedural Due Process - 42 U.S.C. § 1983**<br><br>**3.  Violation of Cal. Civil Code § 52.1**<br><br>**4.  Violation of Cal. Constitution Art. I, §13**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

00144088.WPD

## I.     JURISDICTION AND VENUE.

1.   Plaintiff's claims arise under 42 U.S.C. §1983 and state law. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2.   Plaintiff's claims arise out of, *inter alia*, acts of personnel employed by the California Highway Patrol ("CHP"), acts which caused injury to Plaintiff in the County of Los Angeles. Accordingly, venue is proper within the Central District of California.

## II.    PARTIES.

3.   Plaintiff Yaquelin Sevastiana Ordonez, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles.

4. Defendant Warren A. Stanley ("Stanley"), an individual, was the Commissioner of the California Highway Patrol ("CHP") at the time of this incident and was Assistant Commissioner, Staff from 7/1/2010 to 1/31/2013. As Assistant Commissioner, Staff, Stanley had final authority over the development and issuance of CHP Impound Policy and any revisions thereto. Plaintiff sues Stanley in his individual capacity only.

5.   Defendant Amanda Ray ("Ray"), an individual sued herein as DOE 1, is the Commissioner of the CHP and was Assistant Commissioner, Staff from April 2, 2018, to April 1, 2020. Plaintiff is informed and believes and based thereon alleges that as Assistant Commissioner, Staff, defendant Ray had final authority over the development and issuance of CHP Impound Policy and any revisions thereto. Plaintiff sues Ray in her individual capacity only.

6.   Defendant Bill Siegl ("Siegl"), an individual sued herein as DOE 2, was Assistant Commissioner, Staff from November 15, 2016, to April 2, 2018. Plaintiff is informed and believes and based thereon alleges that as Assistant Commissioner, Staff, defendant Siegl had final authority over the development and issuance of CHP Impound

00144088.WPD

Policy and any revisions thereto. Plaintiff sues Siegl in his individual capacity only.

7.   Defendants Dennis Davidson, ("Davidson"), Chris Lane ("Lane"), Kevin Davis ("Davis"), Pat Arvizu ("Arvizu"), Ruben Leal ("Leal") and Paul Congi ("Congi"), all individuals sued herein as DOES 3-8, respectively, were/are considered "subject matter experts," and each was/is  responsible for ensuring the CHP Impound Policy reflected/reflects the current state of the law; in the CHP's Rotation Tow Program, from 2010 to 2019 (Davidson), and in the CHP's Research and Planning Section, from 2010 to the present (Lane, Davis, Arvizu, Leal and Congi). Plaintiff sues Davidson, Lane, Davis, Arvizu, Leal and Congi in their individual capacities only.

8.   Defendant Charles Sampson ("Sampson"), an individual and CHP captain, was at all times material hereto, the commanding officer of the CHP's Central Los Angeles station. Plaintiff sues Sampson in his individual capacity only.

9.   Defendants Sgt. A. Braaksma (#16551) ("Braaksma") and Sgt. S. Pool (#14242) ("Pool"), individuals and CHP sergeants, were at all times material hereto, supervisors assigned to the CHP's Central Los Angeles station. Plaintiff sues Braaksma and Pool in their individual capacities only.

10.   Defendant Officer E. Bailey (#22360) ("Bailey") an individual and CHP patrol officer, was at all times material hereto, a patrol officer assigned to the CHP's Central Los Angeles station. Plaintiff sues Bailey in her individual capacity only.

11.   Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES, and therefore sues these defendants by fictitious names. Plaintiff will give notice of their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that defendant DOES are responsible in some manner for the damages and injuries hereinafter complained of.

12.   The complained of acts and omissions were performed by persons within the

course and scope of employment with their employer, the CHP. All acts and omissions were under color of state law.

III.    **FACTS COMMON TO ALL CLAIMS.**

*A. CHP VEHICLE IMPOUND POLICY.*

13.  Plaintiff is informed and believes and thereon alleges that defendants Stanley, Davidson, Ray, Siegl, Lane, Davis, Arvizu, Leal and Congi have personally approved an official policy, hereinafter "Impound Policy," by which a CHP officer may direct or cause a vehicle to be seized and impounded for 30 days without a warrant whenever the officer concludes one or more of the following conditions exist:

A. The vehicle's driver has never been issued a driver's license; or

B. The driver's license for the vehicle's driver is suspended or revoked; or

C. The driver can only drive a vehicle with a functioning, certified interlock device, and the vehicle the driver is driving lacks such a device.

14.  Under the above-described Impound Policy, when the vehicle is impounded for 30 days the Policy bars the vehicle's owner from reclaiming possession of her vehicle and instead, directs that the vehicle be held at a tow yard designated by the CHP. The Impound Policy prohibits the vehicle's owner from reclaiming possession even though (a) there was no community caretaking justification for initially seizing the vehicle and having it towed to a storage lot; (b) the owner who later seeks to reclaim the vehicle is a validly licensed driver or has a licensed driver available to drive the vehicle; (c) the owner is willing and able to reclaim possession; (c) the owner has the statutorily required vehicle insurance; (d) the owner is tending payment of accrued administrative fees and storage charges; and (e) the vehicle is not posing a danger to public safety.

15.  Under the Impound Policy, both the initial vehicle seizure and subsequent 30-day vehicle impoundment are made without warrants or judicial review of any type.

00144088.WPD

16.  During the 30 days or more the vehicle is impounded, vehicle storage charges are accruing which, per the Impound Policy, must be paid in full before the vehicle will be released even in cases where the 30-day impound period has expired. If not paid, the privately-owned storage yard will sell the vehicle at a lien sale to satisfy the unpaid storage charges and administrative fees. If the amount recovered by the lien sale is insufficient to pay outstanding storage charges and administrative fees, the vehicle's (former) registered owner remains liable to the tow yard for the difference. Typically, following a 30-day vehicle impound administrative fees and storage charges add up to about $2,000 or more.

17.  By virtue of this Impound Policy, the vehicle's owner is deprived of her property and possessory interests and rights in the vehicle. For example, the vehicle owner cannot sell the vehicle even to a licensed driver because she does not have current possession or control of the vehicle, and is unable to prevent the accumulated storage fees (which often results in the sale of the vehicle at a lien sale auction because either the storage fees exceed the vehicle's value or the storage fees have become so high that the owner does not have the funds to pay them).

18.  The Impound Policy provides no mechanism for judicial review of a 30-day impound and no constitutionally adequate administrative hearing mechanism to challenge the lawfulness of the 30-day impounds.

19.  Further, the Impound Policy's requirements on notice, if implemented as written, would not allow for timely notice to the vehicle's owner of an impoundment. The notices sent pursuant to the Impound Policy or provided at the time of initial seizure, state the impounds are mandatory 30-day impounds. Thus, the notices communicate to a person whose vehicle was impounded that the vehicle will be kept for a minimum of 30 days, and misleads the owner to believe that any attempt to seek the return of the vehicle

in less than 30 days is effectively meaningless. Even if the owner could produce a valid driver's license or a licensed driver to drive the car off the impound lot within the first 30 days of impoundment, a plain reading of the text of the Impound Policy does not inform someone of their right to claim the vehicle with their own license or a licensed driver at a time they could afford to pay the one day initial impound fee or a few days of storage fees. The notice effectively informs the vehicle owner that the fact the vehicle was seized without a warrant will *not* be a basis for the vehicle's release.

20.   Since the seizure and impound of Plaintiff's vehicle was pursuant to Cal. Vehicle Code § 16402.6, pursuant to the Impound Policy the CHP officers involved in the seizure applied the Policy's provisions. Consequently, Plaintiff's only means of contesting the lawfulness of a § 16402.6(a)(1) thirty-day impound was by requesting a hearing under Cal. Veh. Code § 22852. But pursuant to the Impound Policy, at a §22852 tow hearing the vehicle's registered owner such as Plaintiff is limited to two arguments: either that there are "mitigating circumstances," the definition of which is not provided in the Vehicle Code; or establishing the invalidity of the initial decision to have the vehicle removed from the street. Furthermore, pursuant to Art. III §3.5 of the California Constitution, a § 22852 hearing official cannot adjudicate the constitutionality of a 30-day impound without a warrant. Thus, the Impound Policy identified in paragraph 13 that defendants prepared and/or approved, provides no constitutionally adequate remedy for vehicle owners to contest the lawfulness of the 30-day impounds.

*B.*   *THE SEIZURE AND THIRTY-DAY IMPOUND OF PLAINTIFF'S VEHICLE.*

21.   Plaintiff was, at all times relevant to this lawsuit, the registered owner of a 2009 Toyota Matrix passenger vehicle.

22.   On October 24, 2019 at about 8:30 a.m., at or near the freeway interchange of

00144088.WPD

the I-5 southbound and the I-10 westbound, defendant CHP Officer Bailey stopped Francisco Gomez Lopez (Plaintiff's spouse) while he was driving Plaintiff's vehicle. Plaintiff's spouse was on his way home after dropping Plaintiff off at school, and was only a short distance from home. In the course of the traffic stop, the officer seized and impounded Plaintiff's vehicle under Cal. Veh. Code § 14602.6(a)(1), on grounds Mr. Lopez was driving on a suspended license within the meaning of § 14602.6(a)(1).

23.   Defendant Bailey had the car towed away even though there was no community caretaking justification for the tow -- Mr. Lopez informed the officer a licensed driver (Plaintiff's sister) would be there in minutes to legally take possession and drive the car to a safe location. Nevertheless, Bailey imposed a 30-day impound on Plaintiff's vehicle. The seizure and vehicle impound were made without a warrant or judicial review of any kind.

24.   The following day, on October 25, 2019, Plaintiff requested that officials assigned to the CHP Central Los Angeles office release her vehicle from the 30-day impound. She was accompanied by Diego Gomez, a California licensed driver. They spoke with Defendant Sgt. Pool. First, Sgt. Pool refused to allow Ms. Ordonez and Mr. Gomez to record the conversation with Sgt. Pool (a violation of Plaintiff's First and Fourteenth Amendment rights). Second, even though Ms. Ordonez offered to pay all towing and accrued storage charges and even though Sgt. Pool was informed that Mr. Gomez, a licensed California driver, could and would lawfully drive Ms. Ordonez's Toyota from the vehicle storage lot, Sgt. Pool refused to release the vehicle. That is, Plaintiff is informed and based thereon alleges that even though Sgt. Pool knew the vehicle had current registration and was insured, and further knew there was no safety or other community caretaking justification that justified the refusal to release the vehicle, Sgt. Pool refused to do so. Plaintiff is informed and based thereon alleges Sgt. Pool was

claiming that since the vehicle was subject to a 30-day Cal. Veh. Code § 14602.6 impound, the vehicle could not be released unless Plaintiff could show justification for early release per the statute (e.g., subdivisions (d) or (f) of §14602.6).

25.  Plaintiff also attended a storage hearing on October 30, 2019 wherein CHP Officials, including defendant Braaksma, again refused to release Plaintiff's vehicle.

26.  By letter delivered via facsimile and mail to Defendants Stanley and Sampson on October 25, 2019, by and through her counsel Plaintiff made a written request to CHP Captain Sampson, for the release of her vehicle. The letter stated *inter alia*, that the CHP's refusal to release the vehicle was wrongful and in violation of decisions such as *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017) and *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018). See **Exhibit A** hereto, a true copy of the letter.

27.  Sampson read the letter and understood plaintiff's position that Ninth Circuit case law mandated that her vehicle be released since she had a licensed driver to retrieve it and was playing all accrued fees. Nevertheless, Sampson denied release of the vehicle because of the possibility Ms. Ordonez's husband might drive it while his license was suspended. From plaintiff's perspective, defendants ignored Plaintiff's request, and no one has ever responded to Plaintiff's counsel's written request.

28.  Plaintiff is informed and believes and based thereon alleges that defendants' objective in refusing to release Plaintiff's vehicle was to punish Plaintiff for having allowed her vehicle to be driven by an unlicensed driver or a driver who was driving on a suspended license.

29.  Plaintiff is informed and believes and based thereon alleges that defendants Stanley, Davidson, Lane, Davis, Arvizu, Leal and Congi were responsible for the development and/or enforcement of the CHP's Impound Policy in its application to vehicle seizures such as Plaintiff's. Plaintiff is further informed and believes and based

00144088.WPD

thereon alleges that these defendants gave approval to vehicle seizures like Plaintiff's even though they had been informed the application of the Impound Policy to the circumstances of the seizure of Plaintiff's vehicle, would be contrary to controlling law as stated by decisions of the Ninth Circuit and the California courts of appeal. These allegations are based on the following:

A. Plaintiff is informed and based thereon alleges, that by October 2007, it was well-known within the CHP Impound Policy's policy-making units that appellate courts from both the Ninth Circuit and California had held that seizing and towing a vehicle without a warrant and based merely on that the seizure complied with state law, would violate the Fourth Amendment *if* the seizing officer(s) did not have facts justifying a seizure under the Fourth Amendment community caretaking doctrine. Plaintiff is further informed and believes and based thereon alleges, that defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi knew the CHP's Impound Policy made community caretaking justification for vehicle seizures *irrelevant*.

B. Plaintiff is informed and based thereon alleges, that by October 2019, defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi knew that notwithstanding a registered owner's actual knowledge that the driver of the owner's vehicle seized under § 14602.6(a)(1) had a suspended license, the Fourth Amendment obligated the CHP to release the vehicle to its owner on her demand coupled with presentation of a licensed driver available to take possession of the vehicle along with tendering of accrued towing and storage fees. These defendants also knew, however, that line officers were seizing vehicles in violation of the Fourth Amendment, and were refusing to release the vehicle in violation of the Fourth Amendment, because as these defendants knew, defendants had refused

to update and/or modify the CHP's Impound Policy to conform with existing law.

C. Plaintiff is informed that shortly after the Ninth Circuit issued its *Brewster* decision (decided June 21, 2017) former CHP Commissioner Farrow was informed of the *Brewster* decision and that the Impound Policy was inconsistent with *Brewster*. Despite being so informed and despite having the power and obligation to update and revise the Impound Policy so as to be consistent with the Fourth Amendment, Farrow refused to do so.

D. Plaintiff is informed and believes and based thereon alleges that via letter delivered in early December 2017, Defendant Stanley, then acting CHP Commissioner, was informed that the CHP was enforcing the Impound Policy contrary to law and in contravention of the *Brewster* holding. Despite being so informed, Stanley refused to take any remedial steps. Plaintiff is informed and based thereon alleges that instead, Stanley sanctioned the continued enforcement of the Impound Policy in violation of law.

E. Plaintiff is informed and believes and based thereon alleges that continuing up through the present, with the knowledge and acquiescence of defendant Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi, CHP officers have regularly seized and impounded vehicles under § 14602.6 in violation of *Brewster*.

F. Stanley was informed, in writing, of the unlawful 30-day impound of Plaintiff's vehicle, including why it was unlawful. Despite being so informed, Stanley refused to direct that his subordinates respect the *Brewster* and *Sandoval* decisions and thereby, authorize the release of Plaintiff's vehicle as she had requested.

G. As Assistant Commissioner, Staff from July 1, 2010 to January 31, 2013,

though Stanley had final authority over the development and issuance of CHP Impound Policy and any revisions thereto, he failed to develop and revise, or direct others to do so, the Impound Policy so that it included a requirement that officers impounding vehicles do so only if there was a community caretaking reason, per the law in the Ninth Circuit and State of California at that time as stated in *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005) and *People v. Torres*, 188 Cal.App.4th 775 (2010).

30. Subsequently, following expiration of the 30-day impound the CHP imposed, Plaintiff was forced to pay Brian's Toledo Towing Service $2,350 for her vehicle's return.

## FIRST CAUSE OF ACTION -UNLAWFUL VEHICLE IMPOUND
## 42 U.S.C. § 1983
### (As Against All Defendants)

31. By this reference, Plaintiff re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

32. The seizure and 30-day impoundment of Plaintiff's vehicle violated the Fourth Amendment in that the seizure and impoundment were (a) made without a warrant and (b) did not fall within an exception to the warrant requirement, *e.g.*, during the 30-day impoundment Plaintiff's vehicle did not present a threat to public safety.

33. The unlawful initial seizure and the unlawful continuing seizure of Plaintiff's vehicle were proximately caused by the actions of the defendants, and each of them, including their initial impound of Plaintiff's vehicle without community caretaking, their failure to keep CHP Impound Policy current as required by the case law of the Ninth Circuit and State of California, their failure to train, and their refusals to terminate acts by their subordinates that they knew or reasonably should have known were violating

Plaintiff's rights (i.e. allow the release of plaintiff's vehicle), as explained above.

34.  Plaintiff is therefore entitled to recover compensatory and punitive damages from each defendant proximately caused by the wrongful seizure and 30-day impoundment.

## SECOND CAUSE OF ACTION - SUBSTANTIVE AND PROCEDURAL DUE PROCESS - 42 U.S.C. § 1983

### (As against All Defendants)

35.  Plaintiff re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

36.  Plaintiff is informed and believes and based thereon alleges that when defendants imposed, sanctioned, authorized and/or condoned the 30-day impound on Plaintiff's vehicle pursuant to the Impound Policy and Cal. Veh. Code § 14602.6(a)(1) without a warrant or any form of judicial review, Defendants and each of them did so in order to impose an "administrative penalty" for among other reasons, to deter Plaintiff from letting an unlicensed driver drive her vehicle.

37.  Moreover, by imposing the 30-day vehicle impound without a warrant or any form of judicial review, the above-mentioned defendants caused Plaintiff to lose possession and use of her vehicle for 30 days. Plaintiff incurred this loss even though (a) she has not been adjudicated guilty of any crime arising from the October 24, 2019 vehicle seizure, and (b) Plaintiff informed Defendants she was willing to pay all accrued towing and storage charges, and to reclaim possession of her vehicle with a licensed California driver.

38. Defendants' 30-day impound of Plaintiff's vehicle was arbitrary and capricious in that Defendants could satisfy any legitimate community caretaking need  by seizing and removing the vehicle pursuant to Cal. Veh. Code §22651(p) rather than by a 30-day

impound pursuant to Cal. Veh. Code §14602.6(a)(1).

39.   The 30-day impoundment of Plaintiff's vehicle constituted the imposition of a punitive sanction. *Kokesh v. Securities and Exchange Commission*, ___ U.S. ___, 137 S.Ct. 1635, 1643-44 (2017): "Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence (is) not (a) legitimate nonpunitive governmental objectiv(e).' *Bell v. Wolfish*, 441 U.S. 520, 539, n.20 (1979); *see also United States v. Bajakajian*, 524 U.S. 321, 329, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) ('Deterrence ... has traditionally been viewed as a goal of punishment').'" Because defendants punished Plaintiff without judicial or quasi-judicial review, defendants violated Plaintiff's substantive and/or procedural due process rights. *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (Statute authorizing executive branch to impose summary punishment on aliens subject to deportation, violated due process).

40.   Moreover, demanding that Plaintiff pay fees to reclaim possession of her vehicle was the imposition of *de facto* monetary penalties even though Plaintiff had not been adjudicated guilty of any crime arising from the seizure of her vehicle. The imposition of this financial penalty thus constituted a further violation of Plaintiff's due process rights. *Nelson v. Colorado*, 581 U.S. ___, 137 S.Ct. 1249, 1255-56 (2017) (The State "may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions. . . [U]nder the Due Process Clause, [an individual] who has not been adjudged guilty of any crime may not be punished.").

41.   Further, Defendants' refusal to provide or allow a hearing where the lawfulness of the warrantless 30-day impound could be challenged, their failure to provide a hearing before a neutral party, their failure to provide any judicial review of

-13-

their warrantless seizures, their failure to provide meaningful remedies to remedy their unlawful conduct, their failure to provide notice of the owner's right to retrieve the car in less than 30 days as required by the Fourth Amendment, and their providing false and misleading information to the car's driver and the car's owner that the owner was not lawfully entitled to retrieve the car in less than 30 days, all violate due process of law.

42.   The aforementioned acts of Defendants and each of them directly and proximately caused Plaintiff to be deprived of her rights as stated above, thereby entitling this Plaintiff to recover compensatory damages proximately caused by Defendants' wrongful acts.

**THIRD CAUSE OF ACTION  - VIOLATION OF <u>CAL. CIVIL CODE § 52.1</u>**

**(As Against All Defendants)**

43.   By this reference, Plaintiff re-alleges and incorporates all previous paragraphs as if fully set forth herein.

44.   The 30-day impoundment of Plaintiff's Toyota was done intentionally, at defendants' discretion. Defendants imposed and enforced the 30-day impound so as to punish Plaintiff. Excluding possibly defendant Bailey, Defendants enforced the 30-day impound in knowing violation of the Fourth Amendment to the United States Constitution, and Art. I § 13 of the California Constitution. Further, for the reasons previously explained, Defendants violated the Due Process provisions of the Fifth Amendment and Article I § 7 of the California Constitution.

45.   Within a few days of June 21, 2017, the date *Brewster* was decided, via the CHP policy-making staff and legal research unit, Defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi, were aware that the *Brewster* decision was a "game-changer." That is, Plaintiff is informed and believes and based thereon alleges that these defendants knew that *Brewster* "deemed the legislative intent of . . .

00144088.WPD

14602.6 VC to not hold weight," and that "for anyone up front that handles releases, they'll be the ones that shouldn't deny the release."

46.  Plaintiff is further informed and believes and based on thereon alleges that Defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi knew as a result of *Brewster* and *Sandoval v. County of Sonoma*, <u>912 F.3d 509</u> (9th Cir. 2018), that continuing to enforce a 30 day vehicle impound "after the [vehicle] owner provided the required documents for a release," would be "unconstitutional."

47.  Plaintiff is informed and believes and based thereon alleges that Defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi actually knew that CHP's Impound Policy was in conflict with the *Brewster* and *Sandoval* decisions (because the policy directs that vehicles be impounded for 30 days contrary to those decisions), and with *Miranda* and *Torres* (because the CHP Impound Policy does not require community caretaking) and thus, Defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi knew that line officers like Defendant Bailey and supervisors like Pool, Braaksma and Sampson would enforce 30 day vehicle impounds in violation of these cases.

48.  Defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi knew further that they had the ultimate responsibility to ensure that the Impound Policy would be modified and/or corrected so as to conform to decisional law affecting CHP operations, including the circumstances under which CHP officers could impose and enforce vehicle impounds. Despite such knowledge and their obligations to take action to ensure that the Impound Policy was consistent with the law, for over three years Defendants Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi have refused to take action directing that the Impound Policy be modified to comply with the holdings in *Brewster* and *Sandoval*, and for over ten years have refused to take action

directing that the Impound Policy be modified to comply with the holdings of *Miranda* and *Torres*.

49.   Consequently, Plaintiff's rights under the United States and California Constitutions described above were interfered with by threat, intimidation, or coercion in violation of Cal. Civil Code § 52.1, thereby entitling Plaintiff to recover damages under Cal. Civ. Code § 52.1(b) proximately caused by the 30-day impoundment and the attendant violations of law previously described.

50.   Plaintiff timely submitted to the State of California a claim for damages under Cal. Gov't Code § 910 which has been denied.

**FOURTH CAUSE OF ACTION - UNLAWFUL SEIZURE**

**(CAL. CONST. ART. I §13)**

**(As Against All Defendants)**

51.   By this reference, Plaintiff re-alleges and incorporates all previous paragraphs as if fully set forth herein.

52.   The 30-day impoundment of Plaintiff's vehicle was accomplished without a warrant and not justified by an exception to the warrant requirement, *i.e.*, during the 30-day impoundment the vehicle did not present a threat to public safety. Nor was there any process for judicial review of justification for the impound. Hence, the impound violated Art. I § 13 of the California Constitution.

53.   Therefore, Plaintiff is entitled to recover damages under Art. I § 13 of the California Constitution where such damages were proximately caused by the 30-day impound.

54.   Plaintiff timely submitted to the State of California a claim for damages under Cal. Gov't Code § 910 which has been denied.

///

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

*On The First Cause of Action (against All Defendants)*:

1. That this Court award Plaintiff compensatory and punitive damages, according to proof;

2. That this Court award attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute;

*On The Second Cause of Action*:

3. That this Court award Plaintiff compensatory and punitive damages, according to proof;

4. That this Court award attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute;

*On The Third Cause of Action (against all Defendants)*:

5. That this Court award Plaintiff damages allowed under Cal. Civ. Code § 52.1(b), including statutory damages and penalties;

6. That this Court award attorneys' fees and costs incurred in this action under Cal. Civ. Code § 52.1(h), and any other appropriate statute.

*On The Fourth Cause of Action (against all Defendants)*:

7. That this Court award Plaintiff damages allowed under Art. I § 13 of the California Constitution;

8. That this Court award attorneys' fees and costs incurred in this action under Cal. Civ. Proc. Code § 1021.5 and California's Private Attorney General doctrine, and any other appropriate statute; and

///

*On All Causes of Action (against all Defendants)*:

9. That the Court award such other relief as the Court deems appropriate.

DATED: March 12, 2021

**DONALD W. COOK**
Attorney for Plaintiff

By _____
                Donald W. Cook

00144088.WPD

1

## DEMAND FOR JURY TRIAL

2

    Plaintiff hereby demands a jury trial.

3   DATED: March 12, 2021

4                           **DONALD W. COOK**
                              Attorney for Plaintiff
5

6

7   By_____
                     Donald W. Cook
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DONALD W. COOK**
*Attorney at Law*
3435 Wilshire Blvd., Suite 2910, Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile

Donald W. Cook

Samantha R. Koerner

October 25, 2019

**Via Facsimile (213) 744 2856 and Mail**

Captain Charles Sampson
California Highway Patrol
Central Los Angeles Office
777 W. Washington Blvd.
Los Angeles, CA 90015

> Re:   30 day § 14602.6 Vehicle Impound
> Vehicle Seizure date: 10/24/19
> Registered owner: Sevastiana Yaquelin Ordonez
> Vehicle: 2009 Toyota Corolla / Lic. #8HAF002
> Notice to Appear #MC93028
>
> *And*
>
> Personnel Complaint -- CHP Officer: Sgt. Pool

Dear Capt. Sampson:

I represent Ms. Ordonez regarding the October 24, 2019 seizure and impound of her vehicle, by a CHP officer assigned to your office. This letter is both (a) a request that the CHP release Ms. Ordonez's Toyota and (b) a personnel complaint against Sgt. Pool. Regarding the personnel complaint, I request that the CHP investigate as state law mandates.

Today, Ms. Ordonez appeared at your CHP station to reclaim her vehicle. She was accompanied by Diego Gomez, a California licensed driver. They spoke with Sgt. Pool. First, Sgt. Pool refused to allow Ms. Ordonez and Mr. Gomez to record the conversation with Sgt. Pool. Second, even though Ms. Ordonez offered to pay all towing and accrued storage charges and even though Sgt. Pool was informed that Mr. Gomez, a licensed California driver, could and would lawfully drive Ms. Ordonez's Toyota from the vehicle storage lot, Sgt. Pool refused to release the vehicle. That is, even though Sgt. Pool knew that the vehicle had current registration and was insured, and further knew there was no safety or other community caretaking justification that justified the refusal to release the vehicle, Sgt. Pool refused to do so. It appears that Sgt. Pool was claiming that since the vehicle was subject to a 30 day Cal. Veh. Code § 14602.6 impound, the vehicle could not be released unless the owner can show justification for early release per the statute (e.g., subdivisions (d) or (f) of §14602.6).

Please be advised that Sgt. Pool's refusal to release the vehicle was wrongful and in violation of the Fourth Amendment. Even if there was justification under § 14602.6 for impounding the vehicle (I am not conceding there was statutory justification) the seizure and impound must still comply with the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005); *People v. Torres*, 188 Cal.App.4th 775, 792 (2010). Furthermore, even if the *initial* vehicle

00134607.WPD

Captain Charles Sampson
October 25, 2019
Page 2

seizure and storage was justified under the Fourth Amendment community caretaking doctrine, the
doctrine cannot justifying continuing to hold the vehicle for the 30 day impound period once the
registered owner tenders towing and storage charges and has a licensed driver available to drive the
car. *Brewster v. Beck*, <u>859 F.3d 1194</u> (9th Cir. 2017). *Brewster* means, as stated by a law firm that
regularly advises police agencies, that

> it would constitute a Fourth Amendment violation to continue the impoundment of
> a vehicle seized pursuant to Section 14602.6(a)(1) after the time that a party who
> could lawfully possess the seized vehicle arrived to take custody of the vehicle,
> unless a warrant were obtained to continue the possession of the vehicle or an agency
> is able to articulate facts that support another exception to the warrant requirement
> of the Fourth Amendment.

See the enclosed printout from Vol. 32 No. 15 of the Jones & Mayer advisory (also available at
http://www.jones-mayer.com/news/2017/06/27/vol-32-no-15-ninth-circuit-court-of-appeal-
holds-californias-30-day-vehicle-impound-law-violates-4th-amendment/).

      The refusal to release Ms. Ordonez's Toyota violated clearly established law. See the
aforementioned *Brewster* decision, and *Sandoval v. County of Sonoma*, <u>912 F.3d 509</u> (9th Cir. 2018)
(holding that a § 14602.6 thirty-day impound violates the federal constitution). Because the law is
clearly established, Sgt. Pool along with any CHP officer who refuses to release Ms. Ordonez's
vehicle upon the facts as stated above, is subject to *punitive* damages under the federal civil rights
act. And you may recall from your supervisory training, the officer, *not* the CHP or the State of
California, pays the punitive damages. So if the CHP continues to refuse to release Ms. Ordonez's
Toyota, on her behalf I will seek judicial relief. That relief will include holding responsible in
monetary damages, compensatory and punitive, each and every CHP officer responsible for the 30
day impound in violation of law. *See Angelica R. Untalan v. Warren A. Stanley, et al.*, U.S.D.C. No.
2:19-cv-7599 (Central District of California).

      You and Sgt. Pool may want to seek the advice of legal counsel.

                Sincerely,

                Donald W. Cook

DWC:ms
enc

cc:    CHP Commissioner Warren A. Stanley
          and
    California Highway Patrol
    Office of Legal Affairs
    P.O. Box 942898
    Sacramento, CA 94298

00134607.WPD

**Cook 10/25/19
letter**

**EXHIBIT A**

# News & Information

June 27, 2017

## Vol. 32 No. 15 NINTH CIRCUIT COURT OF APPEAL HOLDS CALIFORNIA'S 30-DAY VEHICLE IMPOUND LAW VIOLATES 4TH AMENDMENT

On June 21, 2017, the Ninth Circuit Court of Appeals issued an opinion in <u>Brewster v. Beck</u> holding that the 30-day impound of a vehicle seized pursuant to Vehicle Code section 14602.6(a)(1) violated the Fourth Amendment. The panel reversed the District Court's dismissal of a class action brought under 42 U.S.C. § 1983 alleging that Los Angeles police officers violated plaintiff's Fourth Amendment rights when they impounded her vehicle for 30 days pursuant to California Vehicle Code section 14602.6(a)(1).

<u>Facts and Background</u>

Lamya Brewster loaned her vehicle to Yonnie Percy, her brother-in-law. Percy was stopped by Los Angeles Police Department (LAPD) officers, who learned that Percy's driver's license was suspended.  The officers then seized the vehicle pursuant to California Vehicle Code section 14602.6(a)(1), which authorizes impounding a vehicle when the driver has a suspended license.  Vehicles seized under this section must generally be held in impound for 30 days. Veh. Code. § 14602.6(a)(1).

Three days later, Brewster appeared at a hearing before the LAPD with proof that she was the registered owner of the vehicle and her valid California driver's license. Brewster offered to pay all towing and storage fees that had accrued, but the LAPD refused to release the vehicle before the 30-day holding period had lapsed.

Ten days after the impound, the LAPD released the vehicle to Superior Auto, the lien holder and legal owner of the vehicle. Pursuant to LAPD policy, Superior Auto had to "ensure that no one, including the registered owner . . . will have access to the . . . vehicle during the remainder of the 30-day impoundment period." Accordingly, Brewster ultimately was deprived of her vehicle for the full 30 days.

Brewster subsequently filed a class action lawsuit under 42 U.S.C. § 1983 on behalf of all vehicle owners whose vehicles were subjected to the 30-day impound. The complaint alleged that the 30-day impound constituted a warrantless seizure that violated the Fourth Amendment. The District Court concluded that the 30-day impound was a valid administrative penalty and granted LAPD's motion to dismiss the case.  Brewster appealed.

<u>Ninth Circuit's Discussion</u>

The Court initially observed that Section 14602.6(a)(1) of the California Vehicle Code authorized police to seize a vehicle when the driver's license has been suspended.  "A vehicle so impounded shall be impounded for 30 days." Within two business days of impoundment, the agency that seizes the vehicle must notify the vehicle's owner and provide an "opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage." Section 14602.6(a)(2), (b). The Court noted that the LAPD's "Impound Policy" mirrored Section 14602.6.

The Court then turned its attention to its analysis of Brewster's constitutional claim, namely that the 30-day impound of her vehicle constituted a "seizure" under the Fourth Amendment.  The Court stated that the Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure is a "meaningful interference with an individual's possessory interests in [his] property." <u>Soldal v. Cook County</u>, 506 U.S. 56, 61 (1992) (internal quotation marks and citation omitted).

The Court commented that, "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." <u>United States v. Hawkins</u>, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotation marks and citation omitted).

The Court observed that parties agreed that the LAPD could impound—and, therefore, seize—Brewster's vehicle pursuant to Section 14602.6(a)(1) under the community caretaking exception to the Fourth Amendment. <u>See United States v. Cervantes</u>, 703 F.3d 1135, 1141 (9th Cir. 2012) (discussing the community caretaking exception).  But this exception is available only to "impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." <u>Id</u>. The Court stated that the exigency that justified the initial seizure of Brewster's vanished once her vehicle arrived in impound and Brewster showed up with proof of ownership and a valid driver's license.  The Court stated that the question it must consider was whether the Fourth Amendment required further authorization for the LAPD to hold the vehicle for 30 days.

In answering this question, the Court initially noted that, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification."

The Court stated that there were no cases on point in the Ninth Circuit, but noted that Judge Henderson of the Northern District of California had addressed the matter "in a thorough and well-reasoned opinion," which the Court found persuasive. See Sandoval v. County of Sonoma, 72 F. Supp. 3d 997 (N.D. Cal. 2014).

The Court stated that, "[b]ecause a 30-day impound is a 'meaningful interference with an individual's possessory interests in [his] property,' Soldal, 506 U.S. at 61 (internal quotation marks and citation omitted), the Fourth Amendment is implicated when a vehicle is impounded under Section 14602.6(a)." The Court remarked that the District Court found that such a seizure did not present a Fourth Amendment problem because "the state has an important interest in . . . keeping unlicensed drivers from driving illegally." In dismissing this conclusion by the District Court, the Court observed that Fourth Amendment was implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual. Sandoval, 72 F. Supp. 3d at 1004.

The Court stated that the Fourth Amendment did not become irrelevant once an initial seizure had run its course. The Court noted that, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification. Appellees [the LAPD] have provided no justification here."

The Court disagreed with a Seventh Circuit decision holding the contrary. See Lee v. City of Chicago, 330 F.3d 456 (7th Cir. 2003). In Lee, the City of Chicago seized Lee's vehicle for evidentiary purposes but failed to return it after it was no longer needed. As in this case, the parties agreed that the initial seizure of the vehicle was reasonable. However, Lee argued that "the continued possession of the property by the government became a meaningful interference with his possessory interest and, thus, must be interpreted as a Fourth Amendment seizure." Id. The Seventh Circuit disagreed, holding that "[o]nce an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable." Id. at 466. Reasoning that "Lee's car was seized when it was impounded," the Seventh Circuit concluded that the City's continued possession of the vehicle "neither continued the initial seizure nor began another." Id.

The Ninth Circuit expressly rejected this reasoning, holding that, "The 30-day impound of Brewster's vehicle constituted a seizure that required compliance with the Fourth Amendment." The Court summarily dismissed the argument that its decision "frustrate[d] the state legislature's intent to impose a penalty on unlicensed drivers." In doing so, the Court stated that, "We have no occasion to decide whether this objective is lawful." Finally, the Court observed that, "The police could impound a vehicle under section 22651(p), which authorizes impoundment when the driver doesn't have a valid license. See Cal. Veh. Code § 22651(p). Section 22651(p) doesn't have a mandatory 30-day hold period, thus avoiding the Fourth Amendment problem presented by section 14602.6(a)."

<u>HOW THIS AFFECTS YOUR AGENCY</u>

Pursuant to this decision, it would constitute a Fourth Amendment violation to continue the impoundment of a vehicle seized pursuant to Section 14602.6(a)(1) after the time that a party who could lawfully possess the seized vehicle arrived to take custody of the vehicle, unless a warrant were obtained to continue the possession of the vehicle or an agency is able to articulate facts that support another exception to the warrant requirement of the Fourth Amendment. As noted by the Court, the community caretaking exception "that justified the seizure vanished once the vehicle arrived in impound and Brewster showed up with proof of ownership and a valid driver's license." According to this analysis, a vehicle would have to be released to a person who provided proof of legal ownership or possession, a valid driver's license, and upon payment of any accrued fees. Accordingly, agencies may wish to review their vehicle impound and release policies with their legal counsel to determine if they comply with the Brewster decision. Those policies, like the Los Angeles Police Department policy, which "mirror" Vehicle Code section 14602.6 may be at risk in light of this decision.

The Ninth Circuit's decision in Brewster is in direct conflict with the Seventh Circuit's decision in the Lee case. A direct circuit conflict on a point of law is an important factor in the United States Supreme Court's determination as to whether or not it will accept a case for review. Only time will tell if the Supreme Court will have the occasion to consider the Brewster case. . .

As always, if you wish to discuss this matter in greater detail, please feel free to contact me at (714) 446 – 1400 or via email at jrt@jones-mayer.com (mailto:jrt@jones-mayer.com).

*Information on www.jones-mayer.com (http://www.jones-mayer.com) is for general use and is not legal advice. The mailing of this Client Alert Memorandum is not intended to create, and receipt of it does not constitute, an attorney-client-relationship.*

---

KEEP IN TOUCH

**f** (https://www.facebook.com/Jones-Mayer-190242264473576/)

**in** (https://www.linkedin.com/company/jones-&-mayer)   **🐦** (https://twitter.com/jonesmayerlaw)

---

NEED ADVICE?

CONTACT US TODAY (/contact-us/)

---

About Us (/about-us/)

Areas Of Practice (/areas-of-practice/city-attorney-services/)

Our Team (/our-team/)

Contact Us (/contact-us/)

## Our Locations

### FULLERTON OFFICE

3777 North Harbor Blvd.
Fullerton, CA 92835
📍 Get Directions
(https://www.google.com/maps/dir//3777+N+Harbor+Blvd,+Fullerton,+CA+92835/@33.9139227,-117.9350257,17z/data=!4
117.9328317!4m7!1m0!1m5!1m1!1s0x80dd2a99629fa2c3:0xe1d6734f9be6b36!2m2!1d-117.9328317!2d33.9139183)
📞 714-446-1400
🖨 714-446-1448

### ROSEVILLE OFFICE

8150 Sierra College Blvd., Suite 190
Roseville, CA 95661
📍 Get Directions
(https://www.google.com/maps/dir//8150+Sierra+College+Blvd+%23190,+Roseville,+CA+95661/@38.746291,-121.229096
121.2269026!4m7!1m0!1m5!1m1!1s0x809b1fd094ba3901:0x3f626b7fa834cbc7!2m2!1d-121.2269026!2d38.7462868)
📞 916-771-0635
🖨 916-771-0690

✉ receptionist@jones-mayer.com (mailto:receptionist@jones-mayer.com)

Need help? Search our site.

🔍 Search

Search