ROB BONTA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General
DONNA M. DEAN
Deputy Attorney General
State Bar No. 187104
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6509
  Fax:  (916) 731-2120
  E-mail:  Donna.Dean@doj.ca.gov
*Attorneys for Defendants*
*Warren A. Stanley, Charles Sampson, A. Braaksma,*
*S. Pool, E. Bailey, Amanda Ray, William Siegl,*
*Dennis Davidson, Chris Lane, Kevin Davis, Pat*
*Arvizu, Ruben Leal, and Paul Congi*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **YAQUELIN SEVASTIANA ORDONEZ,**<br><br>                                    Plaintiff,<br><br>   **v.**<br><br>**WARREN A. STANLEY, CHARLES SAMPSON, SGT. A. BRAAKSMA (#16551), SGT. S. POOL (#14242), OFFICER E. BAILEY (#22360), and Does 1 through 10, all sued in their individual capacities,**<br><br>                                    Defendants. | 2:20-cv-02779 CBM (PJWx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:          August 31, 2021<br>Time:          10:00 a.m.<br>Courtroom:  8B<br><br>Judge:        Hon. Consuelo B. Marshall<br><br>Trial Date:   January 18, 2022<br>Action Filed: March 25, 2020<br><br>*[Filed concurrently with Request for Judicial Notice and Declarations in Support Thereof]* |

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 31, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard in Department 8B of the above-entitled Court, located at 350 West First Street, Los Angeles, California, 90012, Defendants Amanda Ray, William Siegl, Paul Congi, Patricia Arvizu, Ruben Leal, Dennis Davidson, Kevin Davis, and Chris Lane (Moving Defendants) will, and hereby do, move this Court for an order dismissing Plaintiff Yaquelin Sevastiana Ordonez's First Amended Complaint as against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

Moving Defendants bring this motion on the following grounds:

(1) Plaintiff's first cause of action fails to state a cognizable claim against Moving Defendants because:

    a. Plaintiff's allegations are insufficient to state a claim for supervisor liability;

    b. Plaintiff did not suffer any injury related to the alleged unconstitutional policy regarding "community caretaking"

    c. Defendants Paul Congi, Patricia Arvizu, Ruben Leal, Dennis Davidson, Kevin Davis, and Chris Lane were not and are not policymakers for the California Highway Patrol (CHP); and

    d. Moving Defendants are entitled to qualified immunity with respect to plaintiff's first cause of action;

(2) Plaintiff's second cause of action fails to state a cognizable claim against Moving Defendants because:

    a. Defendants Siegl, Congi, Arvizu, Leal, and Davidson were not employed by CHP when the incidents alleged in the first amended complaint occurred;

//

1         b. Plaintiff's allegations are insufficient to state a claim for supervisor

2           liability;

3         c. Plaintiff fails to allege a valid due process claim; and

4         d. Moving Defendants are entitled to qualified immunity with respect

5           to plaintiff's first cause of action;

6      (3) Plaintiff's state law theories against the Moving Defendants are barred

7        because they were not sought via plaintiff's government claim;

8      (4) Plaintiff's fourth cause of action fails to allege any specific facts with

9        respect to Moving Defendants;

10      (5) Plaintiff's third cause of action pursuant to California Civil Code section

11        52.1 fails because plaintiff has not stated a cognizable claim for a

12        constitutional violation or alleged that Moving Defendants acted with a

13        specific intent to violate plaintiff's constitutional rights; and

14      (6) Plaintiff's state law claims are barred by the immunities in California

15        Government Code sections 820.6 and 820.2.

16      This motion is made following the conference of counsel pursuant to Central

17   District of California Local Rule 7-3 which took place on July 8, 2021.

18      Defendants' Motion to Dismiss is based on this Notice of Motion and

19   Motion, the attached Memorandum of Points and Authorities, the concurrently filed

20   Request for Judicial Notice, the file and all pleadings in this matter, any oral

21   argument, any matters upon which judicial notice may be taken, and any and all

22   other matters this court deems just and necessary.

23   //

24   //

25   //

26   //

27   //

28   //

1  Dated:  July 13, 2021                    Respectfully submitted,

2                                           ROB BONTA
                                            Attorney General of California
3                                           MARK T. CUMBA
                                            Supervising Deputy Attorney General
4

5                                           s/ Donna M. Dean

6
                                            DONNA M. DEAN
7                                           Deputy Attorney General
                                            *Attorneys for Defendants*
8                                           *Warren A. Stanley, Charles Sampson,*
                                            *A. Braaksma, S. Pool, E. Bailey,*
9                                           *Amanda Ray, William Siegl, Dennis*
                                            *Davidson, Chris Lane, Kevin Davis,*
10                                          *Pat Arvizu, Ruben Leal, and Paul*
                                            *Congi*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

     A.   California Vehicle Code Sections 14602.6 and 22852 .............. 1

     B.   The Incident in This Case ......................................................... 3

ARGUMENT ......................................................................................................... 4

  I.   Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against the Moving Defendants ................................................. 4

     A.   Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Ray and Siegl .............. 4

          1.   The Allegations Against Defendants Ray and Siegl Are Insufficient ................................................................ 4

          2.   Plaintiff Did Not Suffer Any Injury Related to the Alleged Unconstitutional Policy Regarding "Community Caretaking" .................................................. 5

          3.   Defendants Ray and Siegl Are Entitled to Qualified Immunity with Respect to Plaintiff's First Cause of Action .................................................................................6

              a.   Defendants Ray and Siegl Are Entitled to Qualified Immunity with Respect to Plaintiff's Claim That the Seizure of Her Vehicle Violated the Fourth Amendment ................................................................. 7

              b.   Defendants Ray and Siegl Are Entitled to Qualified Immunity With Respect to Plaintiff's Claim That the Thirty-Day Impound Was Unconstitutional ................. 7

     B.   Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Congi, Arvizu, and Leal .......................................................................................... 12

          1.   Defendants Congi, Arvizu, and Leal Were Not Involved in Any Policy Decisions Related to the *Brewster* and *Sandoval* Cases ......................................... 12

          2.   Defendants Congi, Arvizu, and Leal Were Not Policymakers for CHP ......................................................... 12

          3.   Plaintiff Suffered No Injury Related to the Alleged Unconstitutional Policy Regarding "Community Caretaking" ........................................................................ 13

          4.   The Allegations Against Defendants Congi, Arvizu, and Leal Are Insufficient ................................................. 13

i

**TABLE OF CONTENTS**
(continued)

Page

5.   Defendants Congi, Arvizu, and Leal Are Entitled to Qualified Immunity With Respect to Plaintiff's First Cause of Action ........................................ 14

C.   Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Davidson, Lane, and Davis ........................................................ 14

1.   Defendants Davidson, Lane, and Davis Were Not Policymakers for CHP .................................... 14

2.   Plaintiff Did Not Suffer Any Injury Related to the Alleged Unconstitutional Policy Regarding "Community Caretaking" ................................ 14

3.   The Allegations Against Defendants Davidson, Lane, and Davis Are Insufficient ..................... 14

4.   Defendants Davidson, Lane, and Davis Are Entitled to Qualified Immunity With Respect to Plaintiff's First Cause of Action .......................... 15

II.   Plaintiff's Second Cause of Action Fails to State a Cognizable Claim Against the Moving Defendants ................................. 15

A.   Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Siegl, Congi, Arvizu, Leal, and Davidson .................................... 15

B.   Plaintiff's First Cause Fails to Allege Any Specific Facts Against the Moving Defendants ........................ 15

C.   Plaintiff's Allegations Are Insufficient to State a Procedural Due Process Claim ............................... 16

1.   The Statutory Notification Satisfies Due Process .......... 18

2.   Post-Deprivation Hearings by CHP Employees Satisfy Due Process ..................................... 18

3.   Plaintiff's Claim That the Impoundment Violates Due Process Because It Is a "Punitive Sanction" Fails ................................................. 19

4.   The Payment of Tow and Storage Fees Does Not Violate Due Process ................................. 20

D.   Moving Defendants Did Not Violate Clearly Established Law .................................................... 20

III.   Plaintiff's State Law Claims Fail to State Cognizable Claims Against the Moving Defendants ................................. 21

A.   Plaintiff's Additional State Law Theories of Liability Are Barred Because They Were Not Sought Via Plaintiff's Government Claim ...................................... 21

**TABLE OF CONTENTS**
**(continued)**

Page

B.   Plaintiff's Fourth Cause of Action for Unlawful Seizure Pursuant to the California Constitution Fails to State a Cognizable Claim ........................................................................ 23

C.   Plaintiff's Third Cause of Action for Violation of California Civil Code Section 52.1 Claim Fails ...................... 23

D.   Plaintiff's State Law Claims Are Barred by Immunity ........... 24

1.   Defendants Are Immune Based on Government Code Section 820.6 .......................................................... 24

2.   Defendants Are Immune Based on Government Code Section 820.2 .......................................................... 25

CONCLUSION ................................................................................ 26

# TABLE OF AUTHORITIES

**Page**

CASES

*Ahlers v. Rabinowitz*
  684 F.3d 53 (2d Cir. 2012) .............................................................. 11

*Ali v. Ramsdell*
  423 F.3d 810 (8th Cir. 2005) .......................................................... 11

*Alviso v. Sonoma Cty. Sheriff's Dep't*
  186   198 (2010) ............................................................................ 17

*Ashcroft v. al-Kidd*
  563 U.S. 731 (2011) ............................................................ 6, 7, 11, 21

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ......................................................... 4, 5, 7, 16, 23

*Bell v. Wolfish*
  441 U.S. 520 (1979) ...................................................................... 19

*Blair v. Superior Court*
  218 Cal. App. 3d 221 (1990) ......................................................... 22

*Brewster v. Beck*
  859 F.3d 1194 (9th Cir. 2017) ................................................. *passim*

*Brower v. County of Inyo*
  489 U.S. 593 (1989) ........................................................................ 8

*California v. Hodari D.*
  499 U.S. 621 (1991) ........................................................................ 8

*Case v. Eslinger*
  555 F.3d 1317 (11th Cir. 2009) ..................................................... 11

*City & Cty. of San Francisco, Calif. v. Sheehan*
  575 U.S. 600 (2015) ........................................................................ 9

*City of West Covina v. Perkins*
  525 U.S. 234 (1999) ................................................................... 8, 18

iv

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3      *David v. City of Los Angeles*
4            307 F.3d 1143 (9th Cir. 2002) ................................................................ 17

5      *Davis v. Scherer*
6            468 U.S. 183 (1984) .................................................................................. 7

7      *DeNault v. Ahem*
8            857 F.3d 76 (1st Cir. 2017) ..................................................................... 11

9      *Fall River Joint Unified Sch. Dist. v. Superior Court*
             206 Cal. App. 3d 431 (1988) ................................................................... 22

10     *Fox v. Van Oosterum*
11           176 F.3d 342 (6th Cir. 1999) ................................................................... 11

12     *Gilmore v. City of Minneapolis*
13           837 F.3d 827 (8th Cir. 2016) ................................................................... 11

14     *Goichman v. Rheuban Motors, Inc.*
15           682 F.2d 1320 (9th Cir. 1982) .................................................... 17, 18, 20

16     *Gonzalez v. Village of West Milwaukee*
17           671 F.3d 649 (7th Cir. 2012) ................................................................... 11

18     *Jessop v. City of Fresno*
19           936 F.3d 937 (9th Cir. 2019) ................................................................... 10

20     *Johnson v. State of California*
             69 Cal. 2d 782 (1968) .............................................................................. 25

21
22     *Kokesh v. Sec. and Exch. Comm.*
             137 S. Ct. 1635 (2017) ............................................................................. 19

23     *Lee v. City of Chicago*
24           330 F.3d 456 (7th Cir. 2003) ................................................................... 11

25     *Lopez v. Southern California Permanente Medical Group*
26           115 Cal. App. 3d 673 (1981) ................................................................... 22

27     *Mathews v. Eldridge*
28           424 U.S. 319 (1976) .......................................................................... 16, 17

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Miranda v. City of Cornelius*
    429 F.3d 858 (9th Cir. 2005) ..................................................................5, 6, 16, 17

*Mitchell v. Forsyth*
    472 U.S. 511 (1985) ........................................................................................ 7

*Munoz v. State of California*
    33 Cal. App. 4th 1767 (1995) ........................................................................21

*Nelson v. Colorado*
    137 S. Ct. 1249 (2017) ..................................................................................20

*O'Toole v. Superior Court*
    140 Cal. App. 4th 488 (2006) ..................................................................24, 25

*People v. Torres*
    188 Cal. App. 4th 775 (2010) ....................................................................5, 6

*Recchia v. City of Los Angeles Dep't of Animal Servs.*
    889 F.3d 553 (9th Cir. 2018) ..................................................................16, 17

*Reichle v. Howards*
    566 U.S. 658 (2012) ..................................................................................7, 21

*Rubenstein v. Doe No. 1*
    (2017) 3 Cal. 5th 903 ....................................................................................21

*Salazar v. Schwarzenegger*
    No. CV 07-01854 SJO, 2008 WL 11357881 (C.D. Cal. Sep. 8,
    2008) ............................................................................................................18

*Sandoval v. Cty. of Sonoma*
    912 F.3d 509 (9th Cir. 2018) ..................................................................*passim*

*Scofield v. City of Hillsborough*
    862 F.2d 759 (9th Cir. 1988) ........................................................................17

*Shaul v. Cherry Valley-Springfield Central School District*
    363 F.3d 177 (2d Cir. 2004) ..........................................................................11

vi

1

2

### TABLE OF AUTHORITIES
**(continued)**

Page

3

4

*Shirk v. Vista Unified School Dist.*
42 Cal. 4th 201 (2007)............................................................................21

5

6

*Smith v. Santa Rosa Police Dep't*
97 Cal. App. 4th 546 (2002)......................................................................2

7

8

*Spokane County Legal Servs., Inc. v. Legal Servs. Corp.*
614 F.2d 662 (9th Cir. 1980)...................................................................19

9

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011)....................................................4, 5, 16, 23

10

11

*State of California ex rel. Dep't. of Transportation v. Superior Court*
159 Cal. App. 3d 331 (1984).....................................................................22

12

13

*State of California v. Superior Court*
32 Cal. 4th 1234 (2004)............................................................................21

14

15

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*
34 Cal. 4th 441 (2004)........................................................................21, 22

16

17

*Thompson v. City of Petaluma*
231 Cal. App. 4th 101 (2014)...................................................................17

18

19

*Thompson v. Whitman*
85 U.S. 457 (1873) ..............................................................................8, 10

20

*United States v. Bajakajian*
524 U.S. 321 (1998) .................................................................................19

21

22

*United States v. Garcia-Martinez*
228 F.3d 956 (9th Cir. 2000)....................................................................19

23

24

*United States v. Reese*
2 F.3d 870 (9th Cir. 1993).........................................................................23

25

26

*Wong Wing v. United States*
163 U.S. 228 (1896) .................................................................................19

27

28

*Yagman v. Garcetti*
852 F.3d 859 (9th Cir. 2017)....................................................................16

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

42 U.S.C.
    § 1983 ...................................................................................................4, 13, 14

California Civil Code
    § 52.1 ........................................................................................................23

California Government Code
    § 820.2 ......................................................................................................25
    § 820.6 ......................................................................................................24
    § 911.2 ......................................................................................................21
    § 945.4 ......................................................................................................21
    § 901 .........................................................................................................21
    § 912.4 ......................................................................................................21

California Vehicle Code
    § 14602.6 .............................................................................................*passim*
    § 14607.4 ...........................................................................................1, 17
    § 22852 ...............................................................................................*passim*

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ....................................................................................*passim*

Fourteenth Amendment ...........................................................................1, 10

California Constitution
    Cal. Const., art. III, § 3.5 ........................................................................25

**COURT RULES**

Federal Rule of Criminal Procedure 41(d) ................................................18

**INTRODUCTION**

Plaintiff's lawsuit asserts claims under the Fourth and Fourteenth Amendments, as well as state law, arising out of the impoundment of her vehicle. On October 24, 2019, defendant Officer Bailey stopped Francisco Gomez Lopez (plaintiff's spouse) while he was driving plaintiff's vehicle. First Amended Complaint (FAC), ¶ 22. Plaintiff's vehicle was impounded for thirty days pursuant to California Vehicle Code section 14602.6 because Mr. Lopez was driving with a suspended license. *Id.*

Plaintiff alleges CHP has an "Impound Policy" whereby a CHP officer causes a vehicle to be seized and held for thirty days pursuant to California Vehicle Code section 14602.6 without a warrant in violation of various Ninth Circuit decisions. FAC, ¶¶ 13-20, 26, 29(D), 29(F), 45. Plaintiff recently added eight new defendants: Amanda Ray, William Siegl, Paul Congi, Patricia Arvizu, Ruben Leal, Kevin Davis, Chris Lane, and Dennis Davidson (the Moving Defendants), alleging that they had authority over, or responsibility for, CHP's impound policy. For the reasons set forth below, plaintiff's claims against the Moving Defendants should be dismissed with prejudice and without leave to amend.

**STATEMENT OF FACTS**

**A.   California Vehicle Code Sections 14602.6 and 22852**

The California Legislature passed the Safe Streets Act of 1994 based on findings that unlicensed drivers and drivers with suspended or revoked licenses are far more likely than licensed drivers to cause fatal accidents and to inflict injuries and property loss on innocent drivers. Cal. Veh. Code § 14607.4(b)-(e). An estimated 75 percent of all drivers whose driving privileges have been withdrawn continue to drive. Cal. Veh. Code § 14607.4(e). As a result, the California Legislature determined that it was "necessary and appropriate to take additional steps to prevent unlicensed drivers from driving . . . ." Cal. Veh. Code § 14607.4(f). The Legislature expressed "a critical interest" in taking all appropriate

1   steps to protect California residents from this danger.  *Id*.  This included the
2   temporary impoundment of vehicles driven by unlicensed drivers, or drivers whose
3   licenses were suspended for safety violations.  Cal. Veh. Code § 14602.6.

4        Vehicle Code section 14602.6 authorizes a peace officer to impound a
5   vehicle for thirty days whenever that officer determines:

6        . . . a person was driving a vehicle while his or her driving privilege was
7        suspended or revoked, driving a vehicle while his or her driving privilege
8        is restricted … and the vehicle is not equipped with a functioning,
9        certified interlock device, or driving a vehicle without ever having been
10       issued a driver's license . . . .

11  Cal. Veh. Code § 14602.6(a)(1).

12       Section 14602.6 provides that owners of impounded vehicles "shall be
13  provided the opportunity for a storage hearing . . . in accordance with Section
14  22852."  Cal. Veh. Code § 14602.6(b).  The purpose of the hearing is to "determine
15  the validity of…the storage" or "consider any mitigating circumstances attendant to
16  [] the storage."  *Id*.  The statute lists several conditions that trigger the immediate
17  release of the vehicle, including that the driver reinstated or acquired a valid
18  driver's license and insurance.  Cal. Veh. Code § 14602.6(d)(1).  The fact that a
19  registered owner lacked actual knowledge that the driver did not have a valid
20  license is a mitigating circumstance that supports early release.  *See Smith v. Santa*
21  *Rosa Police Dep't,* 97 Cal. App. 4th 546, 549-550 (2002).

22       Vehicle Code section 22852 dictates that notice "shall be mailed or
23  personally delivered to the registered and legal owners within 48 hours" and sets
24  forth the elements of such notice, including "[a] statement that, in order to receive
25  their poststorage hearing, the owners, or their agents, shall request the hearing in
26  person, writing, or by telephone within 10 days of the date appearing on the notice."
27  Cal. Veh. Code § 22852(b).  Section 22852 also mandates that the "hearing shall be
28  conducted within 48 hours of the request, excluding weekends and holidays" and

1    that "[t]he public agency may authorize its own officer or employee to conduct the

2    hearing if the hearing officer is not the same person who directed the storage of the

3    vehicle." Cal. Veh. Code § 22852(c).

4           The statute provides a remedy if reasonable grounds for the storage are not

5    established in that the "agency employing the person who directed the storage shall

6    be responsible for the costs incurred for towing and storage." Cal. Veh. Code §

7    22852(d).

8           CHP's impound policy tracks Vehicle Code sections 14602.6 and 22852 and

9    provides additional procedural guidance. Request for Judicial Notice (RJN), Sproul

10   Decl. Ex. 1.

11      **B.    The Incident in This Case**

12          Plaintiff alleges the California Highway Patrol (CHP) has an "Impound

13   Policy" – personally approved by CHP Commissioner Stanley – whereby a CHP

14   officer causes a vehicle to be seized and held for thirty days without a warrant

15   under certain circumstances. FAC, ¶¶ 13-20. Those impounds are made pursuant

16   to California Vehicle Code section 14602.6.[1] *Id.*

17          On October 24, 2019, CHP Officer Bailey stopped Francisco Gomez Lopez

18   (plaintiff's spouse) while he was driving plaintiff's vehicle on the freeway. FAC, ¶

19   22. Plaintiff's vehicle was impounded for thirty days pursuant to California

20   Vehicle Code section 14602.6 because Mr. Lopez was driving with a suspended

21   license. *Id.* Plaintiff alleges that "there was no community caretaking justification

22   for the tow -- Mr. Lopez informed the officer a licensed driver (Plaintiff's sister)

23   would be there in minutes" to take the car. *Id.*, ¶ 23.

24          Plaintiff alleges that she spoke with CHP Sergeant Pool the following day

25   and requested release of her vehicle, but Sergeant Pool refused to release the

26   vehicle because it was subject to a thirty-day impound. FAC, ¶ 24.

27          [1] Paragraph 20 of the First Amended Complaint erroneously refers to "Cal.
     Vehicle Code § 16402.6 … ." There is no such statute, and plaintiff correctly
28   identifies the statute in the remainder of her complaint.

1    On October 30, 2019, plaintiff appeared for a vehicle storage hearing
2    pursuant to California Vehicle Code section 22852.  FAC, ¶ 25.  Plaintiff's vehicle
3    was not released early after the vehicle storage hearing.  *Id*.

**ARGUMENT**

**I.    PLAINTIFF'S FIRST CAUSE OF ACTION FAILS TO STATE A COGNIZABLE CLAIM AGAINST THE MOVING DEFENDANTS**

    **A.    Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Ray and Siegl**

        **1.    The Allegations Against Defendants Ray and Siegl Are Insufficient**

Supervisory officials may not be sued under 42 U.S.C. section 1983 solely on the basis of their position as a supervisory government official; supervisory officials can only be sued under section 1983 based upon their own wrongful behavior.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

    Plaintiff alleges that Defendants Ray and Siegl "had final authority over the development and issuance of CHP Impound Policy and any revisions thereto" based on the fact that they held the position of Assistant Commissioner – Staff. FAC, ¶¶ 5, 6.  Plaintiff further alleges on information and belief – without providing any detailed facts – that Defendants Ray and Siegl knew the CHP Impound Policy was unconstitutional and that officers were seizing vehicles in violation of the Fourth Amendment.  FAC, ¶¶ 29A and 29B.  These allegations are insufficient to state a claim against Defendants Ray and Siegl.  *Iqbal,* 566 U.S. at 678; *Starr*, 652 F.3d at 1216.  In *Iqbal*, the court explained:

    To survive a motion to dismiss, a complaint must contain sufficient

4

> factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 678 (citations omitted, emphasis added). The court also articulated two basic principles governing the sufficiency of a pleading:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.* . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

*Id*., at 678-679 (citations omitted, emphasis added).

> Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id*., at 679 (citations omitted). Thus, a complaint does not suffice if it alleges "naked assertion[s] devoid of further factual enhancement." *Id*. at 678.

In *Starr*, the court explained that "detailed factual allegations that go well beyond reciting the elements of a claim" and describe specific facts demonstrating that the defendant was on notice of alleged constitutional violations satisfy the *Iqbal* pleading standard. *Starr*, 652 F.3d at 1216. Plaintiff's threadbare allegations are insufficient to state a claim against Defendants Ray and Siegl.

### 2. Plaintiff Did Not Suffer Any Injury Related to the Alleged Unconstitutional Policy Regarding "Community Caretaking"

Plaintiff alleges that the Moving Defendants "actually knew that CHP's Impound Policy was in conflict . . . with *Miranda* [*v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005)] and [*People v. Torres,* 188 Cal. App. 4th 775 (2010) (because the CHP Impound Policy does not require community caretaking)" and therefore knew that CHP officers and supervisors "would enforce 30 day vehicle impounds in violation of these cases." FAC, ¶ 47. Plaintiff's allegations regarding the alleged

non-compliance of CHP policy with the *Miranda* and *Torres* cases do not and cannot state a claim against any of the defendants in this case because the impound of plaintiff's vehicle in this case was not a result of any such alleged deficiencies.

The initial seizure of plaintiff's vehicle complied with the community caretaking doctrine because there was no licensed driver at the scene to take possession of the vehicle when plaintiff's husband was stopped on the freeway for driving with a suspended license. FAC, ¶ 22. *Miranda*, 429 F.3d at 865 ("The violation of a traffic regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation.") There is no authority to support plaintiff's contention that an officer must wait for a licensed driver to appear on the freeway to retrieve a vehicle in order to avoid violating the Fourth Amendment. As such, even if CHP's impound policy is deficient with respect to *Miranda* and *Torres* (which defendants dispute), any such deficiency did not result in an unlawful seizure of plaintiff's vehicle; therefore, the alleged deficiencies do not support individual liability based on the circumstances in this case.

### 3. Defendants Ray and Siegl Are Entitled to Qualified Immunity With Respect to Plaintiff's First Cause of Action

The doctrine of qualified immunity shields a government official from liability for monetary damages unless the plaintiff establishes "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity grants officials "breathing room to make reasonable but mistaken judgments about open legal questions" and "properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743. The purpose of qualified immunity is to ensure public officials will not be unduly hampered by fear of lawsuits when carrying out their duties to the public, and that peace officers in

1  particular will not always err on the side of caution for fear of being held financially

2  liable.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Davis v. Scherer*, 468 U.S.

3  183, 196 (1984).  Qualified immunity accomplishes these objectives by serving as

4  "both a defense to liability and limited 'entitlement not to stand trial or face the

5  other burdens of litigation.'"  *Iqbal*, 556 U.S. at 672.

6       To determine whether a right was "clearly established," a right must be

7  established "in a 'particularized' sense so that the 'contours' of the right are clear to

8  a reasonable official."  *Reichle*, 566 U.S. at 665 (quoting *Anderson v. Creighton*,

9  483 U.S. 635, 640 (1987)).  For that to be true, "existing precedent must have

10  placed the . . . constitutional question beyond debate."  *Id*. (citation omitted).  This

11  requires either "controlling authority" or "a robust 'consensus of cases of

12  persuasive authority'" establishing that the official's conduct was unconstitutional.

13  *al-Kidd*, 563 U.S. at 741-742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

14          **a.**    **Defendants Ray and Siegl Are Entitled to Qualified**

15                  **Immunity With Respect to Plaintiff's Claim That the
Seizure of Her Vehicle Violated the Fourth**

16                  **Amendment**

17       Even if the removal of the vehicle from the freeway under the circumstances

18  in this case is held to have violated the Fourth Amendment, defendants are entitled

19  to qualified immunity.  There is no law clearly establishing that an officer must wait

20  any length of time – especially on a freeway – for a licensed driver to retrieve a

21  vehicle when the driver cannot legally remove the vehicle.  Thus, there is no law

22  clearly establishing that the community caretaking exception to the warrant

23  requirement does not apply to the situation in this case.

24          **b.**    **Defendants Ray and Siegl Are Entitled to Qualified**

25                  **Immunity With Respect to Plaintiff's Claim That the
Thirty-Day Impound Was Unconstitutional**

26       Defendants Ray and Siegl are also entitled to qualified immunity because the

27  law is not clearly established that the thirty-day impoundment of plaintiff's vehicle

28  under the circumstances in this case was unconstitutional.  First, there is no United

States Supreme Court authority that directly addresses the issue in this case, but existing Supreme Court precedent indicates the continued possession of property after a lawful seizure is subject only to due process considerations.  The Supreme Court explained that a seizure is the singular event of taking possession or control, as distinguished from the subsequent possession or control of that property:

> From the time of the founding to the present, the word 'seizure' has meant a 'taking possession' 2 N. Webster, An American Dictionary of the English Language 67 (1828); 2 J. Bouvier, A Law Dictionary 510 (6th ed. 1856); Webster's Third New International Dictionary 2057 (1981).

*California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("seizure" equated with "actually bringing it within physical control."); see also *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (defining seizure as "an intentional acquisition of physical control").

While *Hodari D.* and *Brower* addressed the seizure of a person, *Hodari D.* cited *Thompson v. Whitman*, 85 U.S. 457 (1873), which explained the distinction between the seizure and possession of property.  In *Thompson*, a New Jersey sheriff seized a vessel for illegal clam and oyster raking pursuant to a state statute authorizing seizure within his county.  *Id*. at 470.  However, the sheriff initially seized the vessel in New York waters and then brought it to New Jersey, arguing that the seizure was continuous and thus became a seizure in New Jersey.  Id. The Supreme Court rejected the argument, holding that "seizure" only applied to the initial act of taking possession: "A seizure is a single act, and not a continuous fact. Possession, which follows seizure, is continuous."  *Id*. at 471.

Consistent with the finding that a seizure is a specific act, and not a state of being, the Supreme Court evaluated the retention and disposition of lawfully seized property under due process standards, while making no reference to the Fourth Amendment in *City of West Covina v. Perkins*, 525 U.S. 234 (1999).  In *Perkins*,

8

1  property had been lawfully seized, but was no longer needed for the criminal

2  investigation or prosecution. *Id*. at 236. In reviewing the due process standards

3  and requirements for returning the property, the Court never suggested that the

4  continued possession of the property after it was no longer needed as evidence had

5  become a Fourth Amendment violation. *Id*. at 240-243. Thus, Supreme Court

6  precedent supports the argument that the continued possession of property that is

7  lawfully seized is governed by due process, not the Fourth Amendment.

8       Second, contrary to plaintiff's contention, the Ninth Circuit's decision in

9  *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), has not clearly established the law

10  on this issue. The Supreme Court recently emphasized that it has never held that a

11  single circuit court opinion – as opposed to a Supreme Court opinion – can clearly

12  establish the law for purposes of qualified immunity. *City & Cty. of San Francisco,*

13  *Calif. v. Sheehan*, 575 U.S. 600, 614 (2015). Moreover, the decision in *Brewster*

14  has been questioned in subsequent Ninth Circuit opinions, and, as such, is not

15  "clearly established."

16       In *Brewster*, the court held that "the Fourth Amendment is implicated when a

17  vehicle is impounded under section 14602.6." *Id*. at 1197. The parties in *Brewster*

18  agreed that the seizure was justified by the community caretaking doctrine at the

19  outset, but the court held that the Fourth Amendment required further justification

20  for the continued possession of the vehicle for thirty days. *Id*. at 1196, 1197. The

21  Ninth Circuit followed *Brewster* in *Sandoval v. Cty. of Sonoma*, 912 F.3d 509 (9th

22  Cir. 2018), cert. denied sub nom. *Cty. of Sonoma, California v. Sandoval*, 140 S. Ct.

23  142 (2019), but with only two justices agreeing that the Fourth Amendment

24  governed the issue of whether the continued possession of the impounded vehicle

25  was constitutional. *Id*. at 516-517, 521.

26       In his concurring opinion in *Sandoval*, Judge Watford (who was on the panel

27  in *Brewster*) stated:

28       I recognize that the Fourth Amendment analysis in this case is controlled

1    by *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), a decision I joined.

2    After giving the matter further consideration, I am now of the view that

3    we reached the right result in Brewster but for the wrong reason.

4    California Vehicle Code § 14602.6 is constitutionally deficient not

5    because it runs afoul of the Fourth Amendment, as we held in Brewster,

6    but because the post-seizure hearing it affords does not comply with the

7    Due Process Clause of the Fourteenth Amendment.

8    *Sandoval*, 912 F.3d at 521 (J. Watford, concurring).  In a more recent concurring

9    opinion Judge Smith stated:

10   *Brewster*'s reasoning appears to conflict with the Supreme Court's

11   jurisprudence on Fourth Amendment seizures.  The Court has defined a

12   seizure as "a single act, and not a continuous fact." *Thompson v.*

13   *Whitman*, 85 U.S. (18 Wall.) 457, 471, 21 L.Ed. 897 (1873). …

14   Whereas *Brewster* held that the Fourth Amendment continues to apply

15   after the government's initial seizure of property, these Supreme Court

16   cases suggest that, once the government has taken possession of property,

17   a seizure is complete.  It is "[p]ossession, which follows seizure, [that] is

18   continuous." *Thompson*, 85 U.S. (18 Wall.) at 471.

19   Perhaps because of the Court's case law, *Brewster's* reasoning also

20   conflicts with that of several other circuits, which have concluded that the

21   Fourth Amendment provides protection only against the initial taking of

22   property, not its continued retention. [Citations omitted.]

23   *Jessop v. City of Fresno*, 936 F.3d 937, 943 (9th Cir. 2019) (J. Smith, concurring).

24       As described by Judge Smith in the *Jessop* case, the "robust consensus of

25   cases of persuasive authority" indicates that the Fourth Amendment is not

26   implicated by a continuing possession of lawfully seized property.  All of the other

27   circuit courts that have addressed the issue have determined that a seizure under the

28   Fourth Amendment is limited to the taking of possession – the actual seizure of

1   person or property – and does not extend to the continued possession or custody

2   after a lawful seizure.  In *Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003), the

3   Seventh Circuit held that the Fourth Amendment only applied to the seizure of

4   property, and, as long as the seizure itself was lawful, the Fourth Amendment did

5   not apply to the subsequent possession of property.  In *Lee*, the plaintiff's car was

6   properly seized as evidence for a criminal proceeding, but was eventually no longer

7   needed.  The plaintiff in *Lee* argued "the City's refusal to return [plaintiff's] car …

8   constituted an additional 'seizure' within the meaning of the Fourth Amendment."

9   Id., 330 F.3d at 460.  The Seventh Circuit held

10      [o]nce an individual has been meaningfully dispossessed, the seizure of

11      the property is complete, and once justified by probable cause, that

12      seizure is reasonable.  The [Fourth] amendment then cannot be invoked

13      by the dispossessed owner to regain his property.

14   *Id.*, at 466; *see also Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 660 (7th

15   Cir. 2012).  A majority of circuit courts support the Seventh Circuit's decision and

16   reasoning, holding the due process provides the constitutional protection for the

17   retention and return of lawfully seized property.  *DeNault v. Ahem*, 857 F.3d 76, 84

18   (1st Cir. 2017); *Shaul v. Cherry Valley-Springfield Central School District*, 363

19   F.3d 177, 187 (2d Cir. 2004); *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012);

20   *Fox v. Van Oosterum*, 176 F.3d 342, 351, 352 (6th Cir. 1999); *Ali v. Ramsdell*, 423

21   F.3d 810, 814 (8th Cir. 2005); *Gilmore v. City of Minneapolis*, 837 F.3d 827, 838

22   (8th Cir. 2016); *Case v. Eslinger*, 555 F.3d 1317, 1330-1331 (11th Cir. 2009).

23      Given the lack of controlling Supreme Court precedent, the uncertainty of the

24   Ninth Circuit precedent, and the overwhelming authority from other circuits in

25   opposition to *Brewster*, it cannot be said that there is "controlling authority" or "a

26   robust 'consensus of cases of persuasive authority'" establishing that defendants'

27   conduct was unconstitutional.  *al-Kidd*, 563 U.S. at 741-742.  Accordingly,

28   Defendants Ray and Siegl are entitled to qualified immunity.

### B.   Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Congi, Arvizu, and Leal

#### 1.   Defendants Congi, Arvizu, and Leal Were Not Involved in Any Policy Decisions Related to the *Brewster* and *Sandoval* Cases

Plaintiff alleges that Defendants Congi, Arvizu, and Leal "actually knew that CHP's Impound Policy was in conflict with the *Brewster* and *Sandoval* decisions" and therefore "had knowledge" of alleged constitutional violations committed by CHP officers and supervisors.  FAC, ¶ 47; see also, FAC, ¶¶ 29(E), 45, 46, and 48. Paul Congi retired in 2011, Patricia Arvizu retired in 2013, and Ruben Leal retired in 2015 – several years before the *Brewster* opinion was issued in 2017, the *Sandoval* opinion was issued in 2018, and plaintiff's vehicle was impounded in 2019.  FAC, ¶ 22; Request for Judicial Notice, Fernandez Decl., ¶ 2.  Thus, Defendants Congi, Arvizu, and Leal had no involvement in any policy decisions regarding the *Brewster* and *Sandoval* cases and therefore cannot be held liable pursuant to plaintiff's allegations that CHP's impound policy violates the constitution based on those cases.

#### 2.   Defendants Congi, Arvizu, and Leal Were Not Policymakers for CHP

Plaintiff seeks to hold Defendants Congi, Arvizu, and Leal liable for alleged policy decisions stemming from 2005 and 2010 cases.  Plaintiff alleges:

> Plaintiff is informed and based thereon alleges, that by October 2007, it
> was well-known within the CHP Impound Policy's policy-making units
> that appellate courts from both the Ninth Circuit and California had held
> that seizing and towing a vehicle without a warrant and based merely on
> that [sic] the seizure complied with state law, would violate the Fourth
> Amendment *if* the seizing officer(s) did not have facts justifying a seizure
> under the Fourth Amendment community caretaking doctrine. Plaintiff is
> further informed and believes and based thereon alleges, that defendants
> Stanley, Ray, Siegl, Davidson, Lane, Davis, Arvizu, Leal and Congi

1        knew the CHP's Impound Policy made community caretaking

2        justification for vehicle seizures *irrelevant*.

3 FAC, ¶ 29(A) (emphasis in original).  Pursuant to CHP's policy, however, the

4 policymaking authority is vested in the Assistant Commissioner – Staff.  FAC, ¶¶ 5,

5 6; RJN, Lane Decl., Ex. 1.  Defendants Congi, Arvizu, and Leal never held the

6 position of Assistant Commissioner – Staff.  RJN, Fernandez Decl., Ex. 1.  As such,

7 Defendants Congi, Arvizu, and Leal had no policymaking authority and therefore

8 cannot be held liable pursuant to 42 U.S.C. section 1983 based on an

9 unconstitutional policy.

10       **3.**    **Plaintiff Suffered No Injury Related to the Alleged**

11                **Unconstitutional Policy Regarding "Community Caretaking"**

12       For the same reasons discussed in Sections I.A.2, above, any alleged

13 deficiency in CHP's policy with respect to the seizure of vehicles pursuant to the

14 "community caretaking" exception to the warrant requirement did not result in an

15 unlawful seizure of plaintiff's vehicle in this case.  Therefore, the alleged

16 deficiencies in CHP's impound policy related to "community caretaking" do not

17 support individual liability based on the circumstances in this case.

18       **4.**    **The Allegations Against Defendants Congi, Arvizu, and**

19                **Leal Are Insufficient**

20       Even if plaintiff could state a claim against Defendants Congi, Arvizu, and

21 Leal despite the fact that they retired long before the *Brewster* and *Sandoval*

22 decisions, despite the fact that they were not policymakers for CHP, and despite the

23 fact that plaintiff suffered no constitutional injury as a result of CHP's allegedly

24 deficient policy with respect to "community caretaking," for the same reasons

25 discussed in Section I.A.1, above, plaintiff's allegations against these defendants

26 are insufficient.

27 //

28 //

**5.      Defendants Congi, Arvizu, and Leal Are Entitled to Qualified Immunity With Respect to Plaintiff's First Cause of Action**

Defendants Congi, Arvizo, and Leal are entitled to qualified immunity for three reasons: (1) as set forth above, there is no law clearly establishing that the community caretaking exception to the warrant requirement does not apply to the situation in this case; (2) there is no law clearly establishing that an individual who is not a policymaker can be held liable based on a public entity's allegedly unconstitutional policy; and (3) there is no law clearly establishing that the thirty-day impoundment of plaintiff's vehicle was unconstitutional.

**C.      Plaintiff's First Cause of Action Fails to State a Cognizable Claim Against Defendants Davidson, Lane, and Davis**

**1.      Defendants Davidson, Lane, and Davis Were Not Policymakers for CHP**

As discussed in Section I.B.2, above, policymaking authority is vested in the Assistant Commissioner – Staff.  RJN, Lane Decl., Ex. 1.  Defendants Davidson, Lane, and Davis never held the position of Assistant Commissioner – Staff.  FAC, ¶ 7; RJN, Fernandez Decl., Ex. 1.  As such, Defendants Davidson, Lane, and Davis had no policymaking authority and therefore cannot be held liable pursuant to 42 U.S.C. section 1983 based on an unconstitutional policy.

**2.      Plaintiff Did Not Suffer Any Injury Related to the Alleged Unconstitutional Policy Regarding "Community Caretaking"**

For the same reasons discussed in Section I.A.2, above, any alleged deficiency in CHP's policy with respect to the seizure of vehicles pursuant to the "community caretaking" exception to the warrant requirement did not result in an unlawful seizure of plaintiff's vehicle.

**3.      The Allegations Against Defendants Davidson, Lane and Davis Are Insufficient**

Even if plaintiff could state a claim against Defendants Davidson, Lane, and Davis despite the fact that they were no policymakers for CHP, and despite the fact

14

that plaintiff suffered no constitutional injury as a result of CHP's allegedly deficient policy with respect to "community caretaking," for the same reasons discussed in Section I.A.1, above, plaintiff's allegations against these defendants are insufficient.

### 4. Defendants Davidson, Lane, and Davis Are Entitled to Qualified Immunity With Respect to Plaintiff's First Cause of Action

For the same reasons discussed in Section I.A.3 and I.B.5, above, Defendants Davidson, Lane, and Davis are entitled to qualified immunity because: (1) there is no law clearly establishing that the community caretaking exception to the warrant requirement does not apply to the situation in this case; (2) there is no law clearly establishing that an individual who is not a policymaker can be held liable based on a public entity's allegedly unconstitutional policy; and (3) there is no law clearly establishing that the thirty-day impoundment of plaintiff's vehicle under the circumstances in this case was unconstitutional.

## II. PLAINTIFF'S SECOND CAUSE OF ACTION FAILS TO STATE A COGNIZABLE CLAIM AGAINST THE MOVING DEFENDANTS

### A. Plaintiff's Second Cause of Action Fails to State a Cognizable Claim Against Defendants Siegl, Congi, Arvizu, Leal, and Davidson

As set forth above, Defendants Congi, Arvizu, and Leal retired long before plaintiff's vehicle was impounded in October 2019. RJN, Fernandez Decl., Ex. 1. In addition, Defendant Siegl retired in 2017, and Defendant Davidson retired in May 2019. *Id*. Thus, none of these defendants could have been involved with the alleged due process violations. Therefore, the second cause of action should be dismissed as against them.

### B. Plaintiff's Second Cause of Action Fails to Allege Any Specific Facts Against the Moving Defendants

Plaintiff makes no specific allegations against any of the Moving Defendants in the second cause of action alleging due process violations. FAC, ¶¶ 35-42.

Rather, plaintiff's allegations against these defendants are solely related to the alleged deficiencies in CHP's impound policy related to the Fourth Amendment. See FAC, ¶ 29.  *See*, *Iqbal,* 566 U.S. at 678; *Starr*, 652 F.3d at 1216.

### C.   Plaintiff's Allegations Are Insufficient to State a Procedural Due Process Claim[2]

The complaint states various theories for the proposition that the 30-day impoundment of plaintiff's vehicle violated procedural due process: (1) the notice provided was insufficient and/or misleading (FAC, ¶ 41); (2) the administrative hearing was not held before a neutral party (*id.*); and (3) the 30-day impoundment was a "punitive sanction" (*id.*, ¶ 39).  None have merit.

The court "must apply the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation."  *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017).  Under *Mathews*, a court considers three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *Mathews*, 424 U.S. at 335; *see also*, *Miranda* , 429 F.3d 858, 867 (9th Cir. 2005).

To determine whether a procedural due process violation occurred, "the relevant inquiry is … whether the statutory procedure itself is incapable of affording due process."  *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553, 561 (9th Cir. 2018) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989).)  Thus, the court does not assess "whether this particular seizure was proper, but instead whether the statute provides due process."

---

[2] As the court noted in its October 16, 2020, order, the First Amended Complaint "identifies the Second Cause of Action as raising both procedural and substantive due process, but Plaintiff only alleges a procedural due process claim." Dkt. No. 25, p. 9, n. 3.

*Id.* at 562.  Plaintiff concedes that "the impound here was pursuant to Cal. Vehicle Code section [14602.6]" (FAC, ¶ 22); therefore, the relevant question is whether section 14602.6 provides for adequate process.  *See Recchia*, 889 F.3d at 562 (analyzing statutory scheme in due process case involving seizure of animals).

Applying the *Mathews* balancing test, the Ninth Circuit has repeatedly held that procedures such as those provided in Vehicle Code sections 14602.6 and 22852 satisfy due process.  *See Miranda*, 429 F.3d at 867, 868 (holding that no pre-deprivation notice and pre-seizure hearing was required for vehicle impoundment and noting that sending notices within forty-eight hours of an impoundment ensures that "erroneous deprivation of an owner's vehicle will be slight, and satisfies due process concerns"); *David v. City of Los Angeles*, 307 F.3d 1143, 1146 (9th Cir. 2002), rev'd on other grounds, 538 U.S. 715 (2003) (stating that section 22852 provides adequate process); *Scofield v. City of Hillsborough*, 862 F.2d 759, 763-64, 766-67 (9th Cir. 1988) (concluding that pre-seizure process is not required to tow a vehicle under similar circumstances); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1325 (9th Cir. 1982) ("Balancing the governmental and private interests at stake, we hold that provision for a post-seizure hearing within forty-eight hours satisfies the requirements of due process.").  The California courts agree. *Thompson v. City of Petaluma*, 231 Cal. App. 4th 101, 107-108 (2014); *Alviso v. Sonoma Cty. Sheriff's Dep't*, 186 Cal. App. 4th 198, 214 (2010).

The State of California has a strong interest in keeping unlicensed drivers and drivers whose licenses have been suspended or revoked off the streets because such drivers are far more likely than licensed drivers to cause fatal accidents and to inflict injuries and property loss on innocent drivers.  Cal. Veh. Code § 14607.4(b)-(e).  As discussed below, the procedures afforded pursuant to Vehicle Code sections 14602.6 and 22852 avoid the risk of an erroneous deprivation of a vehicle owner's interest in the vehicle.  Plaintiff does not allege that defendants failed to abide by the due process requirements set forth in sections 14602.6(b) and 22852, and none

1   of plaintiff's legal theories are valid.

2          **1.  The Statutory Notification Satisfies Due Process**

3         Plaintiff erroneously asserts that the notice provided by CHP pursuant to

4   Vehicle Code sections 14602.6 and 22852 is inadequate.  FAC, ¶ 41.  Contrary to

5   plaintiff's assertion, however, CHP is not required to include in the notice a

6   statement of plaintiff's legal rights or remedies beyond what is mandated by section

7   22852.  *Perkins*, 525 U.S. at 241; *see also Salazar v. Schwarzenegger,* No. CV 07-

8   01854 SJO (VBKx), 2008 WL 11357881, at *5 (C.D. Cal. Sep. 8, 2008) (holding

9   that 14602.6 provides sufficient notice because "[t]he statute itself is sufficient

10  notice") (quoting *Reetz v. Michigan*, 188 U.S. 505, 509 (1903)).  In *Perkins*, the

11  court held that notice of a post-deprivation hearing need not describe the legal

12  procedures necessary to protect one's interest if such procedures are otherwise set

13  out in published, generally available public sources such as state statutes and case

14  law.  *Perkins*, 525 U.S. at 241.  The court also stated that "neither the Federal

15  Government nor any State requires officers to provide individualized notice of the

16  procedures for seeking return of seized property.  *Id*. at 242-243.  In fact, the court

17  noted that even though Federal Rule of Criminal Procedure 41(d) does not require

18  officers to notify "property owners of the procedures for seeking return of their

19  property," it is not constitutionally inadequate.  *Id*. at 243.  Thus, the notice given

20  pursuant to Vehicle Code sections 14602.6 and 22852 satisfies due process.

21         **2.  Post-Deprivation Hearings by CHP Employees Satisfy Due**

22              **Process**

23        Due process is not violated by the mere fact that the hearing examiner is

24  employed by CHP (*see* FAC, ¶ 41).  The Ninth Circuit repeatedly rejected this

25  argument.  *See, e.g., Goichman*, 682 F.2d at 1323-1324 (holding that the process

26  provided by California Vehicle Code section 22852, which permits an officer or

27  employee to conduct the hearing, is constitutionally sufficient); *David*, 307 F.3d at

28  1147 ("[Plaintiff] also asserts that the mere fact that the hearing examiner was

1   employed by the agency - or the City - was sufficient to show a due process

2   violation because the officer who ordered the towing and storage worked for the

3   agency also. That simply is not the law."); *United States v. Garcia-Martinez*, 228

4   F.3d 956, 960-63 (9th Cir. 2000); *Spokane County Legal Servs., Inc. v. Legal Servs.*

5   *Corp.*, 614 F.2d 662, 668 (9th Cir. 1980)).  Plaintiff alleges no facts showing that

6   CHP's hearing examiners are biased, and courts should not assume such bias.  *See*

7   *Garcia-Martinez*, 228 F.3d at 960-961 (declining to find inherent bias solely

8   because one INS officer issues a removal order and another presides over the

9   hearing).

10          **3.      Plaintiff's Claim That the Impoundment Violates Due**
                       **Process Because It Is a "Punitive Sanction" Fails**
11

12          Plaintiff asserts that a thirty-day impoundment violates due process because

13   it constitutes a "punitive sanction."  FAC, ¶ 39.  None of the cases cited in

14   plaintiff's first amended complaint support this theory.  In *Kokesh v. Sec. and Exch.*

15   *Comm.*, 137 S. Ct. 1635 (2017), the court considered whether a disgorgement was

16   "a sanction" subject to a statute that established a five-year limitations period for

17   "an action, suit or proceeding for the enforcement of any civil fine, penalty, or

18   forfeiture."  *Id*. at 1639.  *United States v. Bajakajian*, 524 U.S. 321 (1998), involved

19   the forfeiture of money pursuant to a federal statute that requires that a person

20   declare when they are transporting more than $10,000 outside the United States.  *Id*.

21   at 325.  The court in *Bajakajian* noted that the statute at issue did not involve an in

22   rem proceeding against "guilty property" but instead involved an impermissible in

23   personam criminal forfeiture.  *Id*. at 332.  Unlike the statutes in *Kokesh* and

24   *Bajakajian*, Vehicle Code section 14602.6 involves only a temporary

25   impoundment, not a permanent forfeiture.  *Bell v. Wolfish*, 441 U.S. 520 (1979),

26   involved the conditions of confinement for pretrial detainees and held that as long

27   as the conditions do not amount to punishment, they do not constitute a deprivation

28   of liberty without due process.  *Id*. at 536-537.  Finally, *Wong Wing v. United*

*States*, 163 U.S. 228 (1896), involved the punishment of deportees by imprisonment at hard labor. *Id.* at 238. None of these cases inform the due process issue in this case.

### 4. The Payment of Tow and Storage Fees Does Not Violate Due Process

There is no support for plaintiff's claim that requiring payment of fees to reclaim vehicles is, in and of itself, a due process violation. *See* FAC, ¶ 40. Pursuant to Ninth Circuit law, such fees do not violate due process. *Goichman*, 682 F.2d at 1325. In *Goichman*, the court held that the government interest in imposing the cost of the removal on the vehicle owner and retaining possession of the vehicle as security for the owner's payment of towing and storage fees outweighs the vehicle owner's private interests. *Id.* at 1324, 1325.

The authority cited in plaintiff's complaint in support of this theory – *Nelson v. Colorado*, 137 S. Ct. 1249, 1255-1256 (2017) (FAC, ¶ 40) – is inapplicable. In *Nelson*, the question was whether the state is "obliged to refund fees, court costs, and restitution exacted from the defendant" if a criminal defendants' conviction was overturned. *Id.* at 1252. Under Colorado law, the defendants' money was not refundable unless the criminal defendant was exonerated (e.g., the defendants' money would not be refunded if the criminal conviction is reversed for a procedural reason and not retried.) *Id.* at 1254. The issue of the return of erroneously imposed court costs and restitution has nothing to do with this case which involves a fee to cover the cost of towing and storage of a lawfully seized vehicle.

### D. Moving Defendants Did Not Violate Clearly Established Law

Even if plaintiff could establish a due process violation, there is no clearly established law that the notice and hearing provided by Vehicle Code sections 14602.6 and 22852 violate due process. To the contrary, as discussed above, the Ninth Circuit and California Courts of Appeal have repeatedly upheld the validity of Vehicle Code sections 14602.6 and 22852 in the face of due process challenges.

Accordingly, defendants are entitled to qualified immunity with respect to plaintiff's due process claim, and plaintiff's second cause of action should be dismissed without leave to amend. *Reichle*, 566 U.S. at 665; *al-Kidd*, 563 U.S. at 741-742.

### III. PLAINTIFF'S STATE LAW CLAIMS FAIL TO STATE COGNIZABLE CLAIMS AGAINST THE MOVING DEFENDANTS

#### A. Plaintiff's Additional State Law Theories of Liability Are Barred Because They Were Not Sought Via Plaintiff's Government Claim

No suit for money or damages may be maintained against a governmental entity unless a formal claim has been presented to such entity, and has been rejected (or is deemed rejected by the passage of time). Gov. Code §§ 912.4, 945.4; *see Munoz v. State of California,* 33 Cal. App. 4th 1767, 1776 (1995). Under California Government Code sections 911.2 and 945.4, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *State of California v. Superior Court,* 32 Cal. 4th 1234, 1239 (2004). Any claim against a public entity for personal injury must be presented to the governmental entity within six months of accrual of the cause of action. Gov. Code § 911.2. The time limit runs from the date the claimant's right to sue arises – i.e., the date upon which the statute of limitations would begin to run if there were no claim-filing requirement. Gov. Code § 901; *see Shirk v. Vista Unified School Dist.,* 42 Cal. 4th 201, 209 (2007); *Rubenstein v. Doe No. 1* (2017) 3 Cal. 5th 903, 906.

If a plaintiff is relying on more than one theory of recovery, "the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004). In other words, if a claimant intends to rely on more than one theory of recovery, the basic facts in the claim should include all potential legal theories of recovery, because each cause of action stated in a complaint must

be based on facts stated in the claim.  *Id*.; *Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434 (1988).

In *Lopez v. Southern California Permanente Medical Group*, 15 Cal. App. 3d 673 (1981), the court held that even facts "newly discovered" during the pendency of a lawsuit could not be used to amend a complaint to state a new cause of action if those facts and legal theory were not part of the claim.  *Id*. at 676-677.  A variance between the claim and the complaint that involves "a complete shift in allegations, usually involving an effort to premise liability on acts or omissions committed at different times or by different persons than those described in the claim" will not be allowed.  *Blair v. Superior Court,* 218 Cal. App. 3d 221, 226 (1990); *Stockett*, 34 Cal. 4th at 447; *see also, State of California ex rel. Dep't. of Transportation v. Superior Court,* 159 Cal. App. 3d 331, 336-337 (1984) ["In this case, however, the amended complaint alleges a factual basis for recovery which was not fairly reflected in the claim filed with the State."].)

Plaintiff's government claim mentions nothing about seeking damages against CHP officials for allegedly deficient or unconstitutional policymaking.  RJN, Dean Decl., Ex. 1.  Plaintiff's claim mentions violations of federal and state law by the CHP officers who seized her vehicle or were in contact with plaintiff with respect to her efforts to recover her vehicle.  *Id*.  Those claims are asserted against the original defendants.  FAC, ¶¶ 8-10, 21-27.  Plaintiff's claim also alleges "failure to select, train, supervise, and discipline" employees.  *Id*.  No such claims are alleged in plaintiff's pleading, and any such claims would lack merit because the Moving Defendants are immune from liability for the actions of others pursuant to Government Code section 820.8.  Given plaintiff's failure to raise the theory of liability based on unconstitutional policymaking in her government claim, her claims against the Moving Defendants are barred.

//

//

**B.   Plaintiff's Fourth Cause of Action for Unlawful Seizure Pursuant to the California Constitution Fails to State a Cognizable Claim**

In her Fourth Cause of Action, plaintiff fails to allege any specific facts against the Moving Defendants.  As such, plaintiff's allegations are insufficient to state a claim under the California Constitution against the Moving Defendants. *Iqbal,* 566 U.S. at 678; *Starr*, 652 F.3d at 1216.

**C.   Plaintiff's Third Cause of Action for Violation of California Civil Code Section 52.1 Claim Fails**

California Civil Code section 52.1 (the Bane Act) creates liability on persons who interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual of rights secured by the Constitution or laws of the United States or of the State of California.  Cal. Civ. Code § 52.1(a).  Initially, as discussed above, plaintiff cannot state a valid claim against the Moving Defendants for violation of the United States or California Constitutions; thus, plaintiff cannot state a claim under the Bane Act.

Moreover, to allege a Bane Act claim, a plaintiff must allege not only a constitutional violation, but also a specific intent to violate the plaintiff's constitutional rights.  *Reese*, 888 F.3d at 1043 (quoting *Cornell v. City and County of San Francisco*, 17 Cal. App. 4th 766, 801-802 (2017)); *see also*, *Sandoval*, 912 F.3d 509, 519-520 (9th Cir. 2018).  A mere intention to act that a jury may ultimately find unconstitutional is insufficient.  *Id*. at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).  Plaintiff fails to allege any specific intent by any of these defendants to violate plaintiff's constitutional rights.  Accordingly, plaintiff's third cause of action should be dismissed.

//

//

//

//

### D. Plaintiff's State Law Claims Are Barred by Immunity

#### 1. Defendants Are Immune Based on Government Code Section 820.6

Government Code section 820.6 states:

> [i]f a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.

Cal. Gov't Code § 820.6.  The Legislative Committee comment to section 820.6 makes clear that the scope of this immunity is broad, stating the immunity applies, "even though the employee may have been negligent in his good faith belief that the enactment was constitutional, valid and applicable."  Cal. Gov't Code § 820.6, Legislative Comm. comment.  As one court explained:

> The standard in applying Section 820.6 is not whether a reasonable officer would have understood the enactment was unconstitutional [or inapplicable].  Instead, it is whether the defendant officers' reliance on the enactment was in good faith and without malice.

*O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 507 (2006).  "Good faith" reflects a subjective intention to act under the authority of the governing enactment, and to comply with those rules.   Cal. Gov't Code § 820.6, Legislative Comm. comment.

The complaint expressly alleges that plaintiff's vehicle was impounded pursuant to California Vehicle Code section 14602.6 without a warrant or without an applicable exception to the warrant requirement.  FAC, ¶¶ 22-23.  Defendants are immune from liability pursuant to Government Code section 820.6 with respect to plaintiff's allegations.  Vehicle Code section 14602.6 is an "enactment" under Government Code section 820.6.  The statute expressly permits impoundments and

1   expressly provides that vehicles shall be impounded for thirty days unless released

2   at a hearing based on specified criteria.  The statute does not require that a warrant

3   be issued or that an exception to the warrant requirement exist.  Moreover, the

4   statute does not require release of a vehicle before the expiration of thirty days even

5   if the vehicle's owner is a validly licensed driver or has a licensed driver available

6   to drive the vehicle, is willing and able to reclaim possession, has vehicle insurance,

7   is willing and able to pay accrued fees and charges, and the vehicle is not posing a

8   danger to public safety.  Indeed, CHP and its officers cannot "refuse to enforce a

9   statute, on the basis of it being unconstitutional unless an appellate court has made

10  a determination that such statute is unconstitutional."  Cal. Const., art. III, § 3.5.

11  Since no appellate court has held that sections 14602.6 and 22852 are

12  unconstitutional, *CHP and its officers are constitutionally bound* to enforce those

13  statutes.  Accordingly, defendants are immune from liability for damages under

14  California law.  *See O'Toole v. Superior Court,* 140 Cal. App. 4th at 503.

### 2.   Defendants Are Immune Pursuant to Government Code Section 820.2

17      "[A] a public employee is not liable for an injury resulting from his act or

18  omission where the act or omission was the result of the exercise of the discretion

19  vested in him, whether or not such discretion be abused."  Cal. Gov. Code § 820.2.

20  Government Code section 820.2 provides immunity for policy decisions.  *Johnson*

21  *v. State of California*, 69 Cal. 2d 782, 790-793 (1968).  As the court in *Johnson*

22  explained, the policy behind the discretionary immunity is judicial abstention in

23  areas in which the responsibility for basic policy decisions has been committed to

24  the legislative or executive branches of government.  *Id*. at 793.  Plaintiff alleges

25  that the Moving Defendants were responsible for CHP's impound policy and that

26  her vehicle was seized pursuant to that policy.  FAC, ¶¶ 5-7, 20.  Accordingly, the

27  Moving Defendants are immune from liability for plaintiff's state law claims

28  pursuant to Government Code section 820.2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

Plaintiff has not alleged any viable claims against the Moving Defendants. Accordingly, moving defendants respectfully request that the court grant their motion to dismiss plaintiff's First Amended Complaint as against them pursuant to Federal Rule of Civil Procedure section 12(b)(6) without leave to amend.

Dated:  July 13, 2021                    Respectfully submitted,

ROB BONTA
Attorney General of California
MARK T. CUMBA
Supervising Deputy Attorney General


s/ Donna M. Dean

DONNA M. DEAN
Deputy Attorney General
*Attorneys for Defendants*
*Warren A. Stanley, Charles Sampson,*
*A. Braaksma, S. Pool, E. Bailey,*
*Amanda Ray, William Siegl, Dennis*
*Davidson, Chris Lane, Kevin Davis,*
*Pat Arvizu, Ruben Leal, and Paul*
*Congi*

LA2020300218
35168499.docx